569 So.2d 609 (1990)
STATE of Louisiana, Appellee,
v.
Lorenzo PEREZ, Appellant.
No. 21773-KA.
Court of Appeal of Louisiana, Second Circuit.
October 31, 1990.
*611 Jones, Charles & Gilmore by Arthur Gilmore, Jr., Monroe, for appellant.
William J. Guste, Jr., Atty. Gen., James A. Norris, Jr., Dist. Atty., Marcus R. Clark, John P. Spires, Asst. Dist. Attys., for appellee.
Before FRED W. JONES, Jr. and NORRIS, JJ., and LOWE, J. Pro Tem.
FRED W. JONES, Jr., Judge.
Defendant Perez, found guilty by jury verdict of conspiracy to distribute marijuana, La.R.S. 14:26 and La.R.S. 40:966, and possession of marijuana over 60 but less than 2000 pounds, R.S. 40:966(E)(1), was sentenced to two consecutive ten year terms. He appealed, attacking the sufficiency *612 of evidence upon which he was convicted and arguing the excessiveness of his sentence. Finding substantial evidence to support the jury's verdict, proper consideration and sufficient articulation of La.C. Cr.P. Art. 894.1 guidelines and that the sentence is not unconstitutionally excessive, we affirm.

Factual Context
In 1984-85 Victor Soto, who was incarcerated in a Texas federal penitentiary, met Augie Augustine and the two planned drug transactions to be executed upon their release. After their release, Augustine returned to his native country, Mexico, and Soto returned to New Orleans.
In April 1988 Soto and Augustine arranged a drug transaction. Augustine was to supply Soto with a large quantity of marijuana on a consignment basis with Soto agreeing to perfect the sale of and make payment for the marijuana "within a reasonable time". Pursuant to Augustine's instructions, Soto flew to Tucson, Arizona where he was contacted by Augustine's brother-in-law, defendant Lorenzo Perez. Defendant was in charge of the drug operation on the United States side of the border, being one step below Augustine in the organization's hierarchy. Once a sufficient quantity of marijuana was smuggled into the U.S. from Mexico, Soto, Perez and a third man, Rogillio, weighed and loaded 230 pounds of marijuana into Soto's car. After unsuccessful attempts at selling a portion of the marijuana in Las Vegas, Soto hired a driver, Thomas Sullivan, to pick up the marijuana in Las Vegas and drive it to New Orleans.
On April 25, 1988 while en route to New Orleans, Sullivan was stopped for a traffic violation on I-20 and arrested in Richland Parish. The arresting officer searched Sullivan's vehicle and discovered 96.6 pounds of marijuana in the trunk. Following his arrest Sullivan agreed to assume confidential informant status for the Louisiana State Police.
Feigning illness and inability to travel, Sullivan phoned Soto and successfully lured him to Monroe to pick up the marijuana. On April 26 Soto and an accomplice arrived at Sullivan's Monroe motel room. Soto called Augustine, who was in Mexico, from Sullivan's room, informed him of his driver's illness and advised he would be unable to travel to Mexico that day to meet the organization's required marijuana payment schedule. Then Soto and the accomplice entered the adjacent motel room where the marijuana had been stored and loaded it into Soto's vehicle. They were immediately arrested. Soto agreed to assume confidential informant status and assist law enforcement authorities in arresting higher-ups in the Mexican-American marijuana smuggling organization.
On May 4, under the direction of investigating police officers, Soto traveled to Mexico where he met with Augustine and discussed the money he owed and future narcotic deliveries. Over the next several weeks Soto spoke several times with Augustine and defendant over the phone and succeeded in delaying their collection efforts.
On May 14 Augustine, defendant and Rogillio made a surprise visit to New Orleans. Augustine, apparently concerned that Soto might have cheated them, advised Soto in defendant and Rogillio's presence that he wanted to see the marijuana or be paid the agreed $50,000 immediately. To pacify them Soto, with the assistance of narcotic officers, arranged to show them the marijuana.
On May 15 Sergeant James Cannon and another undercover officer met Soto and defendant in a hospital parking lot in Ferriday. Defendant was given the trunk key of the vehicle in which Sergeant Cannon had been traveling. The trunk contained the 96.6 pounds of marijuana which had been seized from Sullivan and additional marijuana which officers had added to make up the total poundage originally "fronted" to Soto. After inspecting only a portion of the marijuana, but apparently satisfied it was of identical quality and sufficient quantity as previously supplied Soto, defendant indicated he wanted to take the vehicle and marijuana to New Orleans. Because a release of the marijuana would mandate an immediate end to the investigation, *613 Soto and Sergeant Cannon successfully convinced defendant it would be dangerous to drive the marijuana to New Orleans. Defendant agreed to allow Soto additional time to sell the marijuana.
When Soto had not made payment by June 8, defendant informed him he would be picking up the marijuana and transferring it elsewhere for sale.
On June 9 defendant traveled by car to Monroe where Soto had told him the marijuana was being stored. Prior to his arrival, law enforcement officials stored the seized and supplemented marijuana in a mini-warehouse and gave Soto the key. Later that afternoon Soto, defendant and a companion traveled to the mini-warehouse where they were met by Sergeant Cannon. After examining the marijuana, defendant locked the door to the warehouse, put Soto's key in his pocket, and drove Soto to the Monroe airport.
On the afternoon of June 10, Joe Hardeman and Charles Pankey arrived in Monroe. Defendant and Hardeman traveled to the storage facility and loaded the marijuana into a freezer in the back of Hardeman's truck. When defendant and Hardeman arrived at Eastgate Shopping Center, where Pankey and Mauricio Lopez were waiting for them, the four were arrested. The seized and supplemented marijuana was recovered by Louisiana State Police Officers pursuant to a valid search.
On July 25, 1988 a bill of information was filed charging defendant with possession of marijuana in excess of 60 but less than 2000 pounds, and conspiracy to distribute marijuana. Trial commenced on October 23, 1989. The State presented the testimony of Soto, Hardeman, law enforcement officials involved in the operation and a forensic chemist. Exhibits including tapes of recorded telephone conversations and photographs indicating defendant's involvement in the drug organization were also introduced. The defense presented no evidence. The jury returned guilty verdicts on both counts.
Defendant first assigns as error the insufficiency of the evidence to support the jury's verdict on either the conspiracy or possession charge. In assessing the sufficiency of evidence to support a conviction, the reviewing court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier-of-fact could have found defendant guilty beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1977).

Conspiracy To Distribute Marijuana
The bill of information filed against defendant charged that he did willfully and unlawfully conspire with Hardeman, Pankey, Lopez and others between the dates of April 1, 1988 and June 10, 1988 to distribute marijuana. Conspiracy to commit a crime is an inchoate offense separate and distinct from the completed criminal act. The state's burden in proving that defendant committed conspiracy to distribute marijuana is that it must show that an agreement or combination of two or more persons existed for the specific purpose of distributing marijuana and that one or more parties to the agreement did an act in furtherance of the agreement's object. La. R.S. 14:26; State v. Richards, 426 So.2d 1314 (La.1982); State v. Brown, 398 So.2d 1381 (La.1981). An overt act need not be an unlawful act; it may be any act, however innocent in itself, accompanying or following the agreement, which is done in furtherance of its object. State v. Richards, supra; State v. Rittiner, 341 So.2d 307 (La.1976). The elements of conspiracy may be proven by direct or circumstantial evidence. State v. Brown, supra.
Hardeman testified he reached an agreement with defendant to pick up marijuana in Monroe and take it to Texas for distribution. Hardeman stated he went to Monroe on June 10, met with defendant, accompanied him to the warehouse where the marijuana was stored and assisted him in loading it into Hardeman's truck. The two then met Pankey and Lopez who were waiting for them at the Eastgate Shopping Center and were aware of the proposed and ongoing transactions. The testimony of Soto and several surveillance officers as well as photographic exhibits corroborated *614 Hardeman's testimony. This evidence shows beyond a reasonable doubt that defendant conspired with Hardeman, Pankey and Lopez to distribute marijuana and that overt acts were performed in furtherance of the conspiracy.
Defendant correctly argues there could be no criminal conspiracy between himself and Soto as Soto was acting as an agent for the State. State v. Joles, 485 So.2d 212 (La.App. 2d Cir.1986). However, defendant fails to appreciate the criminal significance of his actions in connection with Soto prior to Soto's agreement to assume confidential informant status following his arrest on April 25, 1988. Soto testified he had met defendant in Tucson, at Augustine's instruction, in early April and procured 230 pounds of marijuana from him. He described how defendant and Rogillio weighed out the marijuana and assisted him in loading it into his vehicle. He stated that the marijuana was given to him on consignment to be paid for after its distribution. Soto agreed to pay defendant for the marijuana in weekly or bi-weekly increments, with payment in full owed within 30 days. Soto divided the marijuana between two drivers who transported it out of Tuscon. He admitted that he unsuccessfully attempted to sell the marijuana in Las Vegas and ultimately had to retrieve 96.6 pounds of it. Because he had originally been provided with 230 pounds, it is reasonable to infer that he distributed approximately 134 pounds of marijuana. The evidence shows beyond a reasonable doubt that an agreement was reached between defendant, Soto, Augustine and Rogillio to distribute drugs and that overt acts were taken in furtherance of that conspiracy prior to Soto's assuming police agent status.
Viewing the evidence in the light most favorable to the prosecution, a reasonable trier-of-fact could have found all essential elements of the crime of conspiracy to distribute marijuana proven beyond a reasonable doubt.

Possession of Marijuana
Defendant argues the evidence is insufficient to sustain the conviction for possession of marijuana over 60 pounds, but less than 2000 pounds. Defendant contends that his possession of the key to the warehouse in which the marijuana was stored is insufficient to constitute possession of the contents of the warehouse. He further argues he was unaware that the substance he removed from the warehouse and loaded onto Hardeman's truck was marijuana.
To prove a violation under La. R.S. 40:966(A), (E)(1), the State must show that defendant knowingly possessed in excess of 60 pounds of marijuana. Possession may be either actual or constructive. Actual possession means having an object in one's possession or on one's person in such a way as to have direct physical contact and control of the object. Constructive possession means having a relationship with an object such that it is subject to one's dominion and control. State v. Sweeney, 443 So.2d 522 (La.1983). A person may be in constructive possession of a controlled dangerous substance even though it is not in his actual physical custody if he willingly and knowingly shares with another a right to control it. State v. O'Neal, 501 So.2d 920 (La.App. 2d Cir.1987), writ denied, 505 So.2d 1139 (La.1987). Guilty knowledge and intent may be inferred from the circumstances of the transaction. State v. Edwards, 354 So.2d 1322 (La. 1978).
Law enforcement officers testified they placed a substance known to them to be marijuana and weighing approximately 230 pounds into the storage warehouse and locked it inside. The testimony of a forensic chemist and a certificate of analysis established that the substance was marijuana. The chemist's testimony corroborated the marijuana's weight was in excess of 60 pounds.
The evidence shows defendant was in physical possession of the marijuana and was aware of the identity of the substance he possessed. Sergeant Cannon testified that defendant twice examined the marijuana in his presence, even opening one of the bags on at least one occasion. Hardeman testified that he and defendant discussed picking up the marijuana and that he traveled *615 with defendant to the storage warehouse where defendant unlocked the warehouse with a key in his possession and physically handed the bags containing marijuana to Hardeman to be put onto the truck. Sergeant Cannon, Trooper Robert Buckley, Sergeant John Fragala and FBI agent John Tanza testified they observed defendant open the door to the warehouse and assist Hardeman in loading the freezer on the back of Hardeman's truck. Fragala and Tanza specifically stated they saw the bags in defendant's hand. Further, Soto and other officers involved with earlier stages of the investigation and recordations of telephone conversations, confirmed defendant was aware that the substance which he possessed was marijuana.
Viewing the evidence in the light most favorable to the prosecution, a reasonable trier-of-fact could have found all essential elements of the crime of possession of marijuana in excess of 60 pounds proven beyond a reasonable doubt.
By defendant's second and third assignments of error he asserts the excessiveness of his sentence, challenging its constitutionality and the trial court's compliance with La.C.Cr.P. Article 894.1. Defendant was sentenced to 10 years at hard labor for each of his two convictions, with the sentences to run consecutively. The court later amended the sentence in compliance with La.R.S. 40:966(F) by ordering that defendant serve the first five years of his sentence for the possession of marijuana conviction without benefit of probation, parole or suspension of sentence.
In reviewing the sentence imposed by the trial court, this court is obliged to review the trial court's compliance with the provisions articulated in La. C.Cr.P. Article 894.1. State v. Hammonds, 434 So.2d 452 (La.App. 2d Cir. 1983), writ denied, 439 So.2d 1074 (La. 1983). Articulation of the factual basis for a sentence is the goal of the article, not rigid or mechanical compliance with its provisions. Where the record clearly shows an adequate factual basis for the sentence imposed remand is unnecessary even where compliance with La.C.Cr.P. Article 894.1 is incomplete. State v. Lanclos, 419 So.2d 475 (La.1982). Important elements which should be considered are the defendant's personal history, prior criminal record, likelihood of rehabilitation and the seriousness of the offense committed. State v. Jones, 398 So.2d 1049 (La.1981); State v. Hudgins, 519 So.2d 400 (La.App. 2d Cir.1988), writ denied, 521 So.2d 1143 (La.1988).
In imposing sentence upon the 45 year-old defendant, the trial court stated it had reviewed the presentence investigation report and found as mitigating factors defendant's honorable discharge from the Mexican army and his steady employment record. Defendant, who was divorced and the father of three children, was residing with a female companion who was dependent upon him financially. Defendant is a high school graduate with two years of vocational training. As aggravating factors the court cited defendant's age, his "very poor choice of friends" and the substantial evidence indicating defendant willingly involved himself with the large scale importation of drugs into the United States. Although defendant was a first felony offender, the court determined that the seriousness of the offense mandated incarceration. Compliance with La.C.Cr.P. Article 894.1 was adequate.
A sentence must also be examined for constitutional excessiveness. A sentence violates La. Const. Art. 1 § 20 (1974) if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Bonnano, 384 So.2d 355 (La.1980). A sentence is considered grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it is so disproportionate as to shock the sense of justice. State v. Hogan, 480 So.2d 288 (La.1985). The trial court has wide discretion in imposing a sentence within the statutory limits and such a sentence should not be set aside as excessive in the absence of a manifest abuse of discretion. State v. Square, 433 So.2d 104 (La.1983); State v. Brooks, 431 So.2d 865 (La.App. 2d Cir.1983). The trial court is *616 not required to render a suspended sentence or probation on a first felony offense and may consider whatever factors and evidence it deems important to a determination of the best interest of the public and defendant. State v. McKethan, 459 So.2d 72 (La.App. 2d Cir.1974).
In support of his claim that the sentence is constitutionally excessive, defendant refers the court to the sentences of his co-conspirators who received lesser sentences than he. Disparity of sentences between co-defendants involved in the same crime does not render a sentence disproportionate if the nature of defendant's participation or his character or propensities differ significantly from those of his confederates. State v. Burton, 541 So.2d 329 (La. App. 2d Cir.1989). Although a co-defendant's sentence is a factor to be considered, it is not controlling. State v. Rogers, 405 So.2d 829 (La.1981); State v. Bridges, 480 So.2d 926 (La.App. 2d Cir.1985), writ denied, 486 So.2d 732 (La.1986). Adequate consideration must be given to the individual circumstances of the charged offenses, the varying levels of individual involvement and different judges imposing sentences. State v. Quimby, 419 So.2d 951 (La.1982).
The evidence indicates defendant's involvement in the drug organization was significantly more substantial than that of his co-conspirators who received lesser sentences. Defendant was the original supplier of the marijuana which was the subject matter of this criminal litigation and had authority to accept payment for and make decisions regarding the marijuana's distribution. Further, as the trial court pointed out, different judges sentenced these defendants.
Defendant faced a total exposure of 30 years imprisonment and $57,500 in fines. Under the circumstances of this case, we cannot say the trial court abused its discretion in imposing the two 10 year prison sentences. See La.C.Cr.P. Article 883; State v. Thompson, 543 So.2d 1077 (La. App. 2d Cir.1989), writ denied, 551 So.2d 1335 (La.1989).

Decree
For the foregoing reasons, defendant's convictions and sentences are AFFIRMED.