WILLIAMS, Judge.
Defendants, Keith W. Lankford, Gerald Braden and Jimmy Joe Chandler, were charged by grand jury indictment with one count of cultivation of marijuana, one count of possession of marijuana with intent to distribute and one count of conspiracy to possess more than 2,000 but less than 10,000 pounds of marijuana.
On the day of trial, but before voir dire began, Chandler entered a plea of guilty to one count of cultivation of marijuana. Pursuant to a plea agreement, all other charges against Chandler were dismissed, and a sentence cap of ten years was recommended in return for his testimony against all persons who were involved in the commission of the crimes.
During the jury selection, Braden pled guilty to one count of cultivation of marijuana and one count of conspiracy to possess more than 2,000 but less than 10,000 pounds of marijuana pursuant to a plea bargain. In fulfillment of the plea bargain, the remaining charge of possession of marijuana with intent to distribute was dismissed and a sentence cap of fifteen years on each count to run concurrently was recommended in return for his testimony against all persons who were involved in the commission of the crimes.
Lankford went to trial and was convicted by a jury. He was sentenced to serve fifteen years at hard labor for the cultivation of marijuana conviction and twenty years at hard labor for the conspiracy to possess more than 2,000 but less than 10,000 pounds *1219 of marijuana.[1] His sentences are to be served concurrently.
Lankford appeals, attacking the sufficiency of the evidence to support his conviction. Chandler and Braden complain that their sentences are excessive and that the trial court failed to follow the sentencing guidelines.
FACTS
Keith Lankford and a partner leased approximately 3,000 acres of farmland in DeSo-to Parish to plant and harvest wheat and soybeans. AG Services of America, Inc. (AG Services) financed their farming operation in return for a security interest in their crop. AG Services hired Ira Thrasher, a retired farmer, to oversee the farming operation and to protect its interest in the crops.
By late November 1990, approximately 2,000 acres of wheat had been planted. In April 1991, Gerald Braden brought Alberto Martinez, Jimmy Joe Chandler and Juan Perdomo to the farm ostensibly to do farming and fencing work. The three men lived in a dilapidated house located on the property.
Braden, Martinez, Chandler and Perdomo took part in the planting of the marijuana on the farmland near Bayou Pierre in an area that was hidden by brush and trees.
On July 20, 1991, officers of the Louisiana State Police and DeSoto Parish Sheriffs Department, acting on information received from a confidential informant, raided the farm, and discovered marijuana growing in the wheat fields, small marijuana plants growing in shallow trays and styrofoam cups, and a one-gallon jar containing 22,504 marijuana seeds in the kitchen. Approximately 1,500 marijuana plants were recovered. These plants were expected to yield approximately 2,775 pounds of marketable marijuana with a street value of approximately $5,000,-000.
DISCUSSION

Sufficiency of Evidence

Lankford argues that the evidence presented at trial was insufficient to support his conviction.
Under Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), the proper standard of appellate review for a sufficiency of evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Bellamy, 599 So.2d 326 (La.App.2d Cir.1992), writ denied, 605 So.2d 1089 (La. 2d Cir.1992).
The Jackson standard is applicable in cases involving both direct and circumstantial evidence. The statutory rule as to circumstantial evidence is, “assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence.” LSA-R.S. 15:438. However, this statutory rule for circumstantial evidence does not provide a separate test from the Jackson standard whenever the prosecution relies upon circumstantial evidence to prove an element of the offense. State v. Wright, 445 So.2d 1198 (La.1984); State v. Eason, 460 So.2d 1139 (La.App. 2d Cir.1984), writ denied, 463 So.2d 1317 (La.1985).
Although the circumstantial evidence rule may not establish a stricter standard of review than the more general rational jurors’ reasonable doubt formula, it does emphasize the need for careful observation of the usual standard and provides a helpful methodology for its implementation in cases that hinge upon the evaluation of circumstantial evidence. State v. Wright, supra; State v. Eason, supra.
This court’s authority to review questions of fact in a criminal case is limited to the sufficiency-of-the-evidence evaluation under Jackson v. Virginia, supra, and does not extend to credibility determinations made by the trier of fact. LSA-Const. Art. 5, § 5(C); *1220 State v. Williams, 448 So.2d 753 (La.App. 2d Cir.1984). A reviewing court accords great deference to a jury’s decision to accept or reject the testimony of a witness in whole or in part. State v. Rogers, 494 So.2d 1251 (La.App. 2d Cir.1986), writ denied, 499 So.2d 83 (La.1987).
Lankford contends that he leased the land for legitimate purposes and did not live on the land. He denies having any knowledge that the marijuana was on his farmland. The marijuana was growing in the back part of a 3,000 acre tract of land, and it was not readily visible because it was planted in an area surrounded by brush and trees. He contends that his claim that he did not know the marijuana was in the wheat fields is supported by the fact that Thrasher, who supervised the farming operations, was unaware of the presence of the marijuana. He also asserts that the insurance adjusters who surveyed the wheat fields for damage after heavy rains did not notice the marijuana either.
To prove a violation of LSA-R.S. 40:966(A), (C), the state must show that Lankford knowingly or intentionally produced and possessed marijuana. To prove the conspiracy charge, the state must further show that an agreement between two or more persons existed for the specific purpose of possessing the marijuana, and that one or more parties to the agreement did an act in furtherance of the agreement’s object. State v. Richards, 426 So.2d 1314 (La.1982); State v. Perez, 569 So.2d 609 (La.App. 2d Cir.1990), writ denied, 575 So.2d 365 (La.1991). An overt act need not be an unlawful act; it may be any act, however innocent in itself, accompanying or following the agreement, that is done in furtherance of its object. State v. Perez, supra. The elements of conspiracy may be proven by direct or circumstantial evidence. State v. Clark, 387 So.2d 1124 (La.1980), cert. denied, 449 U.S. 1103, 101 S.Ct. 900, 66 L.Ed.2d 830 (1981); State v. Perez, supra; State v. Brown, 398 So.2d 1381 (La.App. 2d Cir.1981).
Alberto Martinez testified that in October 1990, he was hired by Gerald Braden to clip buds off of the marijuana plants located on Braden’s farm in Texas. After Martinez spent the winter in Mexico, he returned to Texas in March 1991, and again began working for Braden straining seeds from the cut marijuana plants. After the seeds were cleaned, they were stored in a white bucket. Martinez saw Lankford on Braden’s farm, and he observed Braden give Lankford the same kind of white bucket that was used to store the marijuana seeds.
According to Martinez, on one occasion, Lankford and Braden drove a tractor out to the marijuana plants to get a truck that was stuck in the mud. When Martinez and Chandler arrived, they complained to Lank-ford that he had “run over the plants, the marijuana plants.” Braden complained that the plants were worth $5.00 each, and Lank-ford apologized.
During the trial, Defendant Chandler explained his and Defendant Lankford’s involvement in the marijuana operation:
Chandler was from Clarksville, Texas. He had worked for Braden, in Texas, breaking horses. On one occasion, Braden asked Chandler if he knew of any way to retire this year. Chandler testified that he responded, “grow dope”. At some time later Braden informed Chandler that he had worked something out and they would be going to Louisiana.
Chandler testified that he saw Defendant Lankford for the first time at Braden’s farm two weeks before they left Texas to come to Louisiana. Lankford only stayed a few minutes on that occasion. On the day they were scheduled to leave, Lankford returned to the Texas farm. Braden and Lankford traveled together to Louisiana in Lankford’s car; Chandler and Perdomo followed them in a truck. Martinez remained at Braden’s farm. When the men arrived in Louisiana, Lank-ford helped unload the vehicles before he left the farm.
After they completed the repairs to the farmhouse Braden told Chandler to get a white bucket from a camp trailer, which was located near the house. Marijuana seeds were inside of the bucket. This container was not one of the items loaded into the truck when the men left Texas. Braden showed Perdomo and Chandler how to plant *1221 the marijuana seeds. Approximately three weeks later, Martinez arrived at Lankford’s farm. He assisted the men in planting the seeds. When Bayou Pierre flooded after heavy rains, the seeds were washed away.
On their next attempt at cultivating the marijuana, they made seed beds out of wooden boxes and planted the seeds in the beds. When the seeds began to sprout, the small plants were transferred into styrofoam cups and allowed to continue to grow until they were eight to twelve inches high. The marijuana plants were then transferred from the styrofoam cups to the wheat fields.
Chandler and Braden hauled some of the marijuana plants to Donnie Griener’s farm near Clarksville, Texas. Braden stored three of the white containers of marijuana seeds on Griener’s farm. Lankford drove around the Louisiana farm in Griener’s pickup truck. On at least one occasion, Lankford and Braden drove to the back of the farm to check the marijuana plants.
Ira Thrasher testified that Lankford had informed him that Braden and Chandler were on the farm to help with the summer crop of soybeans. Chandler, Braden and Martinez were still on the farm when the law enforcement raid occurred on July 20, 1991. Thrasher stated that the men could not have been there to plant soybeans at the end of July because it was too late in the summer to plant a soybean crop.
Jim Dugan was hired to operate a combine to harvest the wheat. He testified that when he asked Lankford why Chandler, Perdomo, Martinez and Braden were on the farm, Lankford told him that they were there “to keep and eye on the deer” because they were going to start a hunting service. However, there were no hunting stands and no other hunting facilities constructed on the property.
Gerald Braden, a former co-defendant, also explained to the jury Lankford’s involvement in the marijuana farm operation. A synopsis of his testimony is as follows:
Donnie Griener is a rancher in Clarksville, Texas. Griener introduced Braden to Bill Givens and said Givens was interested in planting marijuana. Braden showed Givens places to plant. They planted marijuana near Braden’s Texas house. Givens supplied the plants. Braden leased a house in Avery, Texas where they could clip the buds off the marijuana. This house is where Alberto Martinez testified he had worked in the past.
In early 1991, Griener, Givens, and Braden looked for land in Louisiana where they could grow marijuana. They went to Cous-hatta, picked up Lankford, and drove to the farm which ultimately was raided. Lankford showed the men where he had crops, and Griener showed Braden where he could plant marijuana. Griener never came back to the farm, but Bill Givens came back once to look at the plants. Givens was going to be responsible for drying, clipping, and selling the product in California.
Braden further testified that he was told that the person furnishing the land would receive twenty-five percent of the profits. Chandler testified that his share of the profit was supposed to be greater than Lankford’s share.
When Lankford was arrested, he had a deposit slip from Donnie Griener Brothers, Inc. and a blank check dated July 17, 1991 that had been signed by Griener. Griener also supplied the tractors and the pickup truck used to transport the marijuana to the fields.
The direct and circumstantial evidence, as well as the inferences drawn therefrom, show that Lankford knowingly and intentionally supplied the land for the purpose of growing, harvesting and distributing marijuana: Lankford was observed getting a bucket that was used to store marijuana seeds from Bra-den; Lankford was told that he had rolled his tractor over marijuana plants; Lankford and Braden checked the field where the marijuana plants were located; Lankford was to receive twenty-five percent of the profits from the illegal sales; and, at the time of his arrest, Lankford was in possession of a deposit slip and a blank check signed by the supplier of the machinery to harvest and transport the marijuana. A rational trier of fact could find that the prosecution proved beyond a reasonable doubt that Lankford assisted in the production of marijuana by *1222 knowingly and intentionally supplying land for the cultivation of marijuana and that he was guilty of conspiracy to possess marijuana.

Excessive Sentence

Jimmy Joe Chandler contends his sentence is excessive. This issue is not properly before this court for review.
Chandler’s sentence was imposed on March 17, 1992. LSA-C.Cr.P. Art. 881.1 became effective January 31, 1992, and is applicable to defendant’s sentence. This article precludes the state or the defendant from raising an objection to the sentence on appeal or review or from urging any grounds not previously raised in a motion to reconsider sentence. Because defendant failed to move for reconsideration of sentence, he is barred from attacking his sentence on appeal. State v. Bush, 604 So.2d 1383 (La.App. 2d Cir.1992); State v. Bryant, 607 So.2d 11 (La.App. 2d Cir.1992). Chandler’s assignment of error is not subject to review.
Gerald Braden’s attorney orally moved for reconsideration of the sentence during Bra-den’s sentencing. On appeal, Braden asserts as error the trial court’s failure to use the Louisiana Sentencing Guidelines and contends that his sentence is excessive. Finding merit to Braden’s arguments, we reverse and vacate his sentence and remand the case for resentencing.
The trial judge did not use the sentencing guidelines when she sentenced Bra-den on June 25, 1992. When his attorney objected to that omission, the trial judge specifically stated that the sentencing guidelines would not be applied to Braden’s case because he pled guilty on November 19, 1991, before the effective date of the sentencing guidelines, which was January 1, 1992. Although Braden entered his plea of guilty before the sentencing guidelines became effective, the guidelines are still applicable because he was sentenced after their effective date. State v. Coleman, 605 So.2d 231 (La.App. 2d Cir.1992).
When the record shows that the trial court failed to consider the sentencing guidelines in contravention of LSA-C.Cr.P. Art. 894.1(A), we are required to reverse and vacate the defendant’s sentence. State v. Tracey, 612 So.2d 984 (La.App. 2d Cir.1993). Therefore, Braden’s ease is remanded to the trial court for sentencing in accordance with the sentencing guidelines.

Error Patent

LSA-C.Cr.P. Art. 930.8 provides that at the time of sentencing, the trial court shall inform the defendant of the prescriptive period for post conviction relief. When the trial judge sentenced Chandler, she incorrectly informed him that he had three years from the date his sentence becomes final to “apply for writs of habeas corpus.” The trial judge also incorrectly informed Braden and Lank-ford that they had three years from the date their sentence becomes final to file a writ application. LSA-C.Cr.P. Art. 930.8(C) directs the trial court to inform the defendant of the three-year prescriptive period to submit an application for post-conviction relief. Within ten days of the rendition of this opinion, the district court shall give defendants written notice that they have three years from the date that their judgment of conviction and sentence becomes final to submit an application for post conviction relief. Proof of the defendants’ receipt of such notice shall be filed in the record of the proceedings. State v. Scott, 600 So.2d 756 (La.App. 2d Cir.1992).
CONCLUSION
For the reasons expressed above, the convictions and sentences of Lankford and Chandler are affirmed. The conviction of Braden is affirmed. Braden’s sentence is reversed and vacated, and his case is remanded for resentencing.
AFFIRMED AS TO DEFENDANTS LANKFORD AND CHANDLER; CONVICTION AFFIRMED AS TO DEFENDANT BRADEN; DEFENDANT BRA-DEN’S SENTENCE REVERSED AND REMANDED FOR RESENTENCING.

. Lankford was not sentenced on the charge of possession of marijuana with intent to distribute. The minutes indicate that the trial court declared a mistrial to this count of the indictment after the polling of the jury evidenced that less than ten jurors had voted guilty on this count.