869 So.2d 276 (2004)
STATE of Louisiana, Appellee,
v.
Nathaniel MITCHELL, Appellant.
No. 37,916-KA.
Court of Appeal of Louisiana, Second Circuit.
March 3, 2004.
*279 Louisiana Appellate Project by Margaret S. Sollars, for Appellant.
*280 John Schuyler Marvin, District Attorney, John Michael Lawrence, C. Sherburne Sentell III, Assistant District Attorneys, for Appellee.
Before STEWART, PEATROSS and DREW, JJ.
DREW, J.
Nathaniel Mitchell was tried by a jury and convicted of possession of cocaine with intent to distribute, possession of marijuana with intent to distribute, and two counts of conspiracy to commit the aforementioned crimes.
The defendant now appeals. We affirm the two convictions for possession of cocaine and marijuana with intent to distribute, reverse the two criminal conspiracy convictions, and remand for resentencing.

FACTS
On June 26, 2000, around 9:00 p.m., the defendant was driving east on Interstate 20 in Webster Parish, in his red and black customized 1993 GMC van with Arizona license plates. The defendant was heading to Georgia to attend his brother's funeral, accompanied by three passengers: Adrienne Peevy, a friend; Louella Mitchell, the defendant's daughter; and the defendant's two-year-old grandchild.
The witnesses gave conflicting testimony. The defendant testified that:
 While driving, he passed (on the side of the road) four police units, apparently engaged in a traffic stop.
 He was traveling approximately 70 miles per hour when he attempted to pass a truck located in the right lane.
 He began to move into the left lane, but the truck driver suddenly moved into the left lane as well, causing Mitchell to run off the shoulder of the road.
 After the truck passed, he again drove back onto the roadway.
 A Webster Parish deputy got behind him and subsequently pulled him over.
Webster Parish Deputy John Morton testified that:
 He was driving in the inside lane, en route to assist another deputy at another traffic stop when he saw the defendant's vehicle quickly pull in front of him.
 The defendant then changed lanes back into his original lane of travel.
 No turn signal was given at either lane change.
 He concluded that the defendant had committed the traffic violation of improper lane usage, and suspected he might be impaired.
 He then radioed the officer he was en route to assist that he had encountered a possibly intoxicated subject whom he was going to check out.
 He followed the defendant for another two to three hundred yards before activating his lights to stop the vehicle.
The defendant further testified that:
 After he got out of his van, Deputy Morton informed him that he illegally changed lanes.
 He (the defendant) had his right signal on before changing lanes.
 Another officer pulled over to assist Deputy Morton.
 Deputy Morton told the defendant, "We need to look inside your van."
 He (the defendant) told Deputy Morton that both Ms. Peevy and Miss Mitchell were partially unclothed because of the heat in the van.

*281  He further advised Deputy Morton that if he would allow him to tell the women to get dressed, he would allow Deputy Morton to look in the van.
 Deputy Morton refused to allow the defendant to go back to the van.
 When asked if weapons were in the van, the defendant replied, "Yes," advising Deputy Morton of a pistol along the driver's seat and another gun in the back.
 About this time, another police unit pulled up, carrying two more officers, making a total of four officers at the traffic stop location.
 During the traffic stop, Deputy Morton told him that they needed to search his van and stated, "Now we can do it the easy way or we can do it the hard way."
 Deputy Morton walked off to speak to the other officers and came back with a clipboard in his hand and handed it to one of the other officers and told him to "get him to sign it."
 When Deputy Morton went to retrieve the passengers from the van, there was audible "fussing" between Deputy Morton and Ms. Peevy.
 Deputy Morton called Peevy a "little n... r bitch," and he was pushing her from the right side of the van toward the back.
 He (the defendant) felt intimidated and threatened, so he signed the consent form to allow the officers to search his van.
 Had it not been for the number of officers on the scene and Deputy Morton's name-calling and pushing of Ms. Peevy, he would not have signed the consent form.
Deputy Morton's testimony differs greatly from the defendant's:
 He pulled the defendant over for improper lane usage and issued a citation for this violation.
 He never saw the defendant's van get run off the road by an 18-wheeler.
 The defendant initially appeared very nervous and then, as their conversation continued, the defendant began sweating excessively from his brow.
 The defendant stuttered at times and repeatedly kept looking back over his shoulder at his van.
 The defendant never mentioned anything to him about the women in the van being partially undressed or the air conditioner in his van not working properly.
 After he ran the defendant's license and criminal history, he learned of several weapons charges against the defendant. At the motion to suppress hearing, it was determined that these charges actually belonged to a different Nathaniel Mitchell.
 He read the defendant his rights prior to him signing the consent to search form.
 He went over the form with the defendant prior to the defendant signing the form, and that he did not coerce the defendant in any way to sign the consent form.
 He never used a racial slur against Ms. Peevy.
 The defendant asked what would happen if he didn't sign, and he (Deputy Morton) informed the defendant that if he didn't want to sign the form, then a K-9 officer would be called to walk around the defendant's vehicle.

*282  At that point, the defendant decided that he would sign the consent form.
A police search of the van recovered:
 One fanny pack;
 Thirty-six bags of suspected crack cocaine (three more bags were subsequently found in the van during a later search);
 Six Baggies of suspected marijuana;
 Six suspected marijuana blunts in a Royal Blunt package;
 One Thousand One Hundred Thirty-Five and No/100 Dollars ($1,135.00) in currency;
 One Intretec 9-millimeter Luger;
 One full clip containing 31 rounds of 9-millimeter ammunition;
 One .40 caliber Ruger;
 Two clips containing 20 rounds of .40 caliber ammunition; and
 Three bags of coffee beans.
The defendant was arrested and charged with possession of cocaine with intent to distribute, possession of marijuana with intent to distribute, and two counts of conspiracy to commit the aforementioned crimes. After a trial by jury, the defendant was found guilty as charged on all four counts. The trial court sentenced him to serve 15 years at hard labor for the possession of cocaine with intent, with the first two years to be served without the benefit of parole, probation, or suspension of sentence; and five years for conspiracy to commit possession of cocaine with intent, to run concurrently with each other. The court further sentenced the defendant to serve ten years at hard labor for his conviction of possession of marijuana with intent, and five years for conspiracy to commit possession of marijuana with intent. These latter two sentences were also ordered to be served concurrently with each other but consecutive to the two previously-imposed sentences, making a total of a 25-year hard labor sentence. The defendant appeals his conviction and sentence.

DISCUSSION

I. Validity of Stop, Search, and Seizure

The defendant argues that:
 The stop was based on a mere hunch, which is never enough for an officer to make a stop of a motorist.
 The stop was pretextual.
 The search was based solely on the nervous appearance of the defendant, and mere nervousness alone is not enough reason to allow an officer to search.
 The trial court erred in finding that no coercion was utilized to gain his consent to search.
The defendant relies heavily upon the testimony of Ms. Peevy, who stated that Deputy Morton called her a racial slur and snatched her out of the van, and the alleged fact that his right signal light was in proper working order and was still blinking at the time of the traffic stop. The defendant asserts that:
 Nothing occurred to legally justify extending his detainment past the issuance of the citation.
 No legal justification existed for searching the van.
 No other crime was witnessed other than the minor traffic matter.
 A generalized hunch or mere suspicion that a person is involved in criminal activity is not sufficient to detain an individual and pursue an investigation.
The state argues that:
 The stop of an automobile is reasonable when the police have probable cause to believe a traffic violation has occurred.

*283  Both the traffic stop and subsequent seizure of evidence from defendant's van are legally justified.
 A search conducted with a subject's consent is a specifically established exception to both the warrant and probable cause requirements.
 The defendant's consent was voluntarily and freely given.
To assess the constitutionality of allegedly pretextual searches, the United States Fifth Circuit adopted an objective test in U.S. v. Causey, 834 F.2d 1179, 1184 (5th Cir.1987): "[S]o long as police do no more than they are objectively authorized and legally permitted to do, their motives in doing so are irrelevant and hence not subject to inquiry." See, also, Whren v. U.S., 517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996), and State v. McVan, 32,434 (La.App.2d Cir.3/11/99) 744 So.2d 641.
Since 1968, the requirement for making a stop on less than probable cause has been that the officer must be able to articulate factors leading to a favorable conclusion as to the existence of reasonable suspicion of criminal activity. See, Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Several recent cases speak of traffic stops requiring probable cause. See, for example, Whren, supra. At the time of this stop, this alert officer possessed both reasonable suspicion of the crime of DWI, because of the erratic driving, as well as probable cause that a traffic infraction had occurred, specifically because of the improper lane usage. Vehicular stops have been approved after minimal violations. See, State v. Waters, 00-0356 (La.3/12/01), 780 So.2d 1053.
It is well settled that a warrantless search conducted pursuant to a valid consent is permitted by the Louisiana and United States constitutions. State v. Bostic, 26,000 (La.App.2d Cir.5/4/94), 637 So.2d 591, writ denied, 94-1476 (La.10/14/94), 643 So.2d 159, citing, Schneckloth v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973).
Consent is valid when it is freely and voluntarily given by a person with common authority or other sufficient relationship to the premises or effects sought to be inspected. State v. Bodley, 394 So.2d 584 (La.1981); State v. Owens, 480 So.2d 826 (La.App. 2d Cir.1985), writ denied, 486 So.2d 748 (La.1986), cert. denied, 479 U.S. 840, 107 S.Ct. 145, 93 L.Ed.2d 87 (1986). While a valid consent search is a recognized exception to the warrant requirement, the burden is on the state to prove the consent was freely and voluntarily given. Voluntariness is a question for the trier of fact to be determined by the totality of the circumstances. State v. Edwards, 434 So.2d 395 (La.1983); State v. Brown, 478 So.2d 600 (La.App. 2d Cir. 1985).
The issue of consent turns on the credibility of the witnesses giving contradictory testimony as well as the circumstances surrounding the consent. State v. Yarbrough, 418 So.2d 503 (La.1982). The state presented the testimony of Officer Baker, Deputy Jackson, and Louella Mitchell, who stated they did not hear or observe any threats made to the defendant or any racial name-calling by Deputy Morton. Although Adrienne Peevy testified that Deputy Morton called her a "black bitch" or a "n ... r bitch," she also testified that she did not observe any threats by police officers against the defendant.
In this instance, the trial court at the motion to suppress hearing obviously chose to believe the testimony of the state witnesses in concluding that the defendant's consent to search his vehicle was voluntary and freely given. A finding by *284 the trier of fact on the question of voluntariness is to be given great weight upon appellate review. State v. Bostic, supra. We will not disturb this finding here.
Furthermore, the record illustrates that Deputy Morton closely observed the defendant's behavior and reaction to the traffic stop. As a result of his observations and the surrounding circumstances, he requested to search the defendant's vehicle. He diligently pursued a means of investigation likely to quickly confirm or dispel his particular suspicion about the contents in the defendant's vehicle, in accordance with U.S. v. Sharpe, 470 U.S. 675, 105 S.Ct. 1568, 84 L.Ed.2d 605 (1985). We find the consent and subsequent search to be voluntary, and thus legal, and the evidence obtained therefrom to be admissible.

II. Sufficiency of the Evidence

The defendant argues the evidence did not establish any agreement to commit a crime on the part of the charged conspirators. He further argues that the state failed to present evidence showing an overt act by any of the alleged conspirators in furtherance of a plot, thus failing to prove that two or more of them had specific intent to distribute the cocaine and marijuana.
The state counters that it presented sufficient evidence that a conspiracy existed between the defendant and his two passengers to transport illegal narcotics through Webster Parish and to resell the drugs for profit. The state also argues that the evidence was sufficient to support the conviction for possession of marijuana with intent to distribute, particularly emphasizing the testimony of Sgt. Evans, along with the absence of smoking paraphernalia, which arguably proved that the defendant possessed the marijuana with intent to distribute.
Although the record does not reflect that defendant filed a motion for post-verdict judgment of acquittal pursuant to La. C. Cr. P. art. 821, this court will consider sufficiency arguments in the absence of such a motion. State v. Green, 28,994 (La.App.2d Cir.2/26/97), 691 So.2d 1273.

Possession with Intent to Distribute
Our law on questions of sufficiency of the evidence is well settled. See, generally, State v. Cooks, 36,613 (La. App.2d Cir.12/4/02), 833 So.2d 1034. To prove the crime of possession with intent to distribute, the state must prove beyond a reasonable doubt (1) the defendant knowingly or intentionally (2) unlawfully possessed a controlled substance (3) with intent to distribute. See, State v. Coleman, 552 So.2d 513 (La.App. 2d Cir.1989). Mere possession of marijuana is not evidence of intent to distribute unless the quantity is so large that no other inference is reasonable. State v. Coleman, supra, citing, State v. Greenway, 422 So.2d 1146 (La.1982).
The defendant here possessed a large amount of cocaine and a much lesser amount of marijuana. The jury convicted him for possession with intent to distribute both drugs. The marijuana case is a much closer question.
Testimony of street value and dosage of the drug is relevant to the issue of intent. State v. Tornabene, 337 So.2d 214 (La.1976); State v. Gladney, 29,791 (La. App.2d Cir.9/24/97), 700 So.2d 575.
Factors useful in determining whether circumstantial evidence is sufficient to prove an intent to distribute a controlled dangerous substance include:
 Whether the defendant ever distributed or attempted to distribute any marijuana.

*285  Whether there was marijuana in a form usually associated with marijuana possessed for distribution to others.
 Whether the amount was such as to create a presumption of an intent to distribute.
 Expert or other testimony that such an amount as found in the defendant's possession is inconsistent with personal use only.
 Evidence of any paraphernalia, such as Baggies or scales, evidencing an intent to distribute.
State v. Coleman, supra, citing, State v. House, 325 So.2d 222 (La.1975); State v. Green, 524 So.2d 927 (La.App. 2d Cir. 1988); State v. Green, 508 So.2d 602 (La. App. 2d Cir.1987).
As to the defendant's conviction for possession of marijuana with intent to distribute, four of the five factors to be considered in evaluating the existence of intent to distribute are present in this case.
The marijuana found in the defendant's fanny pack was packaged in seven individual Baggies, which, according to the expert testimony of Sgt. Evans, is consistent with intent to resell or distribute, not for personal use. This packaging, coupled with the fact that there was no smoking paraphernalia found in the vehicle while there were extra Baggies in the fanny pack that were usable for the packaging of more drugs, supports the conclusion that the defendant intended to distribute the marijuana. Admittedly, the defendant does not have any prior convictions for drug distribution.
Sgt. Evans further testified that:
 The bag in which the drugs were contained was easy to conceal and to distance oneself from, should the need arise.
 There was a relatively large amount of money in small denominations, a sign of the sale of illegal narcotics.
 The business cards with Casper and the pager or phone number on them were a good way for a drug dealer to be reached without identifying himself.
Considering the evidence under the Jackson standard, a rational trier of fact could have found that the state proved the elements of possession of marijuana with intent to distribute beyond a reasonable doubt. The conviction of possession of cocaine with the intent to distribute is not challenged on appeal.

Criminal Conspiracy
La. R.S. 14:26 states in pertinent part:
Criminal conspiracy is the agreement or combination of two or more persons for the specific purpose of committing any crime; provided that an agreement or combination to commit a crime shall not amount to a criminal conspiracy unless, in addition to such agreement or combination, one or more of such parties does an act in furtherance of the object of the agreement or combination.
In a conspiracy, it is the combination of at least two minds for an unlawful purpose which is the foundation of the offense. A criminal conspiracy presupposes a corrupt agreement between not less than two people with guilty knowledge on the part of each. The clear purpose of La. R.S. 14:26 is to criminalize the conduct of two or more persons who intend a criminal act, and as a result of that intention manifested as an agreement or combinationone of these does something in furtherance of the intended criminal act. State v. Joles, 485 So.2d 212 (La.App. 2d Cir.1986).
The elements of conspiracy may be proven by direct or circumstantial evidence. *286 State v. Perez, 569 So.2d 609 (La. App. 2d Cir.1990), writ denied, 575 So.2d 365 (La.1991). It is essential to a conspiracy that there be a joining of the minds to accomplish a concerted action which has an unlawful purpose. State v. D'Ingianni, 217 La. 945, 47 So.2d 731 (1950). Criminal intent to commit a conspiracy must exist in at least two minds. State v. Joles, supra.
The record fails to prove any such conspiracy. Not until closing argument did the prosecutor seek to "tie in" the conspiracy element. The state looks to the fact that "someone" packaged the drugs in the individual Baggies for resale and that the defendant and "someone else" would distribute the drugs. The state then made the leap that the amount of drugs found in the defendant's vehicle showed a conspiracy to distribute later.
During trial, the state never questioned Peevy or Louella Mitchell about their knowledge of the crack cocaine and/or marijuana and what the defendant planned to do with the drugs. The state did establish that the black fanny pack containing drugs was tossed from the defendant to the back of the vehicle, where Louella Mitchell was sitting, with no instructions given to her other than to hold the bag. The evidence did not reflect that either of the two passengers hid the bag.
In this instance, the evidence was insufficient to support the jury's conclusion that a conspiracy existed. There was no evidence offered of specific acts with the cocaine and marijuana as part of a joint venture or enterprise between the defendant and his two passengers. Therefore, the evidence, even when viewed in a light most favorable to the prosecution, is insufficient to prove beyond a reasonable doubt that the defendant was engaged in a conspiracy to distribute any of these drugs.

III. Ineffective Assistance of Counsel

The defendant argues he was denied his Sixth Amendment right of effective assistance of counsel when trial counsel failed to object to Sgt. Evans' qualification as an expert in narcotics investigations, as the sergeant lacked scientific credentials justifying his alleged expertise. The defendant complains that the prejudicial effect of this testimony influenced the jury to give more weight to the state's case than was justified. Furthermore, the defendant claims ineffective assistance of counsel for trial counsel's failure to object to or file any post-trial motions challenging the imposition of consecutive sentences. He states that the record does not support consecutive sentences, and the imposition of them violates the Eighth Amendment's prohibition against excessive punishment.
The state counters that trial counsel made a strategic decision not to object to Sgt. Evans as an expert witness in narcotics investigation because of his extensive schooling and training. Evans' testimony was helpful to a clear understanding of whether the illegal narcotics were consistent or inconsistent with personal use. He gave no opinion as to the ultimate issue of guilt. The state contends that the ineffective assistance of counsel claim fails to meet the requirements set forth in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Lastly, the state claims that the consecutive sentences were justified under the facts of this case.
As a general rule, a claim of ineffective assistance of counsel is more properly raised in an application for post-conviction relief ("PCR") in the trial court than by appeal. This is because PCR creates the opportunity for a full evidentiary hearing under La. C. Cr. P. art. 930. State ex rel. Bailey v. City of West Monroe, 418 So.2d 570 (La.1982); State v. *287 Williams, 33,581 (La.App.2d Cir.6/21/00), 764 So.2d 1164. A motion for new trial is also an accepted vehicle to raise such a claim. Id.
However, when the record is sufficient, we may resolve this issue on direct appeal in the interest of judicial economy. State v. Ratcliff, 416 So.2d 528 (La.1982); State v. Willars, 27,394 (La.App.2d Cir.9/27/95), 661 So.2d 673; State v. Smith, 25,841 (La.App.2d Cir.2/23/94), 632 So.2d 887.
A claim of ineffectiveness of counsel is analyzed under the two-prong test developed by the United States Supreme Court in Strickland v. Washington, supra.
To establish that his attorney was ineffective, the defendant first must show that counsel's performance was deficient. This requires a showing that counsel made errors so serious that he was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.
The relevant inquiry is whether counsel's representation fell below the standard of reasonableness and competency as required by prevailing professional standards demanded for attorneys in criminal cases. Strickland, supra; State v. Roland, 36,786 (La.App.2d Cir.6/5/03), 850 So.2d 738; State v. Moore, 575 So.2d 928 (La.App. 2d Cir.1991). The assessment of an attorney's performance requires his conduct to be evaluated from counsel's perspective at the time of the occurrence. A reviewing court must give great deference to trial counsel's judgment, tactical decisions and trial strategy, strongly presuming he has exercised reasonable professional judgment. State v. Roland, supra; State v. Moore, supra.
Second, the defendant must show that counsel's deficient performance prejudiced his defense. This element requires a showing that the errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Strickland, supra. The defendant must prove actual prejudice before relief will be granted. It is not sufficient for the defendant to show the error had some conceivable effect on the outcome of the proceedings. Rather, he must show that, but for counsel's unprofessional errors, there is a reasonable probability the outcome of the trial would have been different. Strickland, supra; State v. Roland, supra; State v. Pratt, 26,862 (La.App.2d Cir.4/5/95), 653 So.2d 174, writ denied, 95-1398 (La.11/3/95), 662 So.2d 9.
A defendant making a claim of ineffective assistance of counsel must identify certain acts or omissions by counsel which led to the claim; general statements and conclusory charges will not suffice. Strickland, supra; State v. Jordan, 35,643 (La.App.2d Cir.4/3/02), 813 So.2d 1123, writ denied, 02-1570 (La.5/30/03), 845 So.2d 1067.

Sergeant Evans' Acceptance as an Expert
The test of the competency of an expert is his knowledge of the subject upon which he is called to express an opinion. State v. Sherer, 411 So.2d 1050 (La.1982); State v. Honeyman, 565 So.2d 961 (La.App. 2d Cir.1990). A combination of specialized training, work experience, and practical application of the expert's knowledge can combine to demonstrate that a person is an expert. See, State v. Smith, 448 So.2d 778 (La.App. 2d Cir. 1984), and State v. Breckenridge, 506 So.2d 799 (La.App. 1st Cir.1987). A person may qualify as an expert based on experience alone. State v. Smith, supra. Extensive training, years of experience, and the taking of specialized courses can qualify a police officer as an expert. State v. Daniels, 614 So.2d 97 (La.App. 2d Cir.1993).
La. C.E. art. 702 states:

*288 If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.
The record shows that Sgt. Evans completed an eight-week course of basic academy training for law enforcement, the Drug Narcotics Interdiction and Investigation for Patrol Officers Course, and the Raid Planning and High Risk Warrants Preparation Course. He obtained annual training with the Louisiana Narcotics Officers Association and the Louisiana Sheriffs' Association for Narcotics Investigation Techniques. Sgt. Evans also attended forfeiture schools, a DEA clandestine methamphetamine lab certification school, and the Interview and Interrogation school. At the time of trial, Evans also possessed over six years of law enforcement experience, with three years in the narcotics division for Webster Parish. He had investigated several hundred narcotics cases, issued hundreds of reports, and testified in 40-50 court cases.
In the instant case, counsel recognized the credentials presented through the testimony of Sgt. Evans and made a professional judgment not to object to Sgt. Evans testifying as an expert. This court must give great deference to trial counsel's judgment, tactical decisions, and trial strategy, strongly presuming he has exercised reasonable professional judgment. State v. Roland, supra; State v. Moore, supra.
The defendant argues that his trial counsel's failure to object to Evans' testimony as an expert, as well as his trial counsel's statement that an "objection would not make any difference because he had the schooling," prevented the trial court from determining whether there was any scientific basis for Sgt. Evans' proposed testimony. This argument is misplaced. The record supports a finding that trial counsel's acquiescence in Sgt. Evans' expertise fails to approach the ineffective assistance standard enunciated in Strickland v. Washington, supra.

Objection to Consecutive Sentencing
When two or more convictions arise from the same act or transaction, or constitute parts of a common scheme or plan, the terms of imprisonment shall be served concurrently unless the court expressly directs that some or all be served consecutively. La. C. Cr. P. art. 883. It is within a trial court's discretion to order sentences to run consecutively rather than concurrently. State v. Robinson, 33,921 (La.App.2d Cir.11/1/00), 770 So.2d 868.
Concurrent sentences arising out of a single course of conduct are not mandatory, State v. Pickett, 628 So.2d 1333 (La.App. 2d Cir.1993), writ denied, 94-0348 (La.5/20/94), 637 So.2d 476; State v. Nelson, 467 So.2d 1159 (La.App. 2d Cir. 1985), and consecutive sentences under those circumstances are not necessarily excessive. State v. Williams, 445 So.2d 1171 (La.1984); State v. Ortego, 382 So.2d 921 (La.1980), cert. denied, 449 U.S. 848, 101 S.Ct. 135, 66 L.Ed.2d 58 (1980); State v. Mills, 505 So.2d 933 (La.App. 2d Cir.1987), writ denied, 508 So.2d 65 (La.1987).
When consecutive sentences are imposed, the court shall state the factors considered and its reasons for the consecutive terms. State v. Green, 614 So.2d 758 (La.App. 2d Cir.1993). A judgment directing that sentences arising from a single course of conduct be served consecutively requires particular justification from the evidence of record. State v. Strother, 606 So.2d 891 (La.App. 2d Cir. 1992).
*289 The sentencing transcript is woefully thin in this regard. However, as we are remanding anyway, perhaps the trial court will at this resentencing better explain its decision on whether to run the remaining two sentences consecutively or concurrently.
Trial counsel's decision not to object to the imposition of the consecutive sentences, even if error, was not so serious that he was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Moreover, the defendant has also not shown that if trial counsel had objected to the imposition of consecutive sentences, there is a reasonable probability the outcome of the sentencing would have been different.

IV. Pro Se Argument Further Alleging Ineffective Assistance of Counsel

The defendant further proposes that trial counsel was ineffective because he: (1) failed to move for a continuance during sentencing, (2) failed to present a meaningful argument attacking the stop, (3) tried the case without viewing the evidence, (4) failed to investigate, (5) failed to assist the defendant through professional advice, (6) failed to prevent the state from eliciting testimony from various witnesses, (7) failed to advise defendant of important decisions, (8) failed to keep defendant aware of court proceedings, and (9) failed to make statements on behalf of the defendant during sentencing proceedings.
The defendant's pro se arguments are no more than generalized statements and conclusory charges, which do not remotely approach the Strickland burden. The defendant has failed to show that counsel's many alleged errors so prejudiced him so as to brand trial counsel's conduct as falling below the standards of reasonableness and competency required by prevailing professional standards demanded of attorneys in criminal cases. He has not demonstrated that, but for trial counsel's errors, his trial outcome would have been different. Strickland, supra.

V. Pro Se Argument of Speedy Trial Violation

The Louisiana Supreme Court discussed the constitutional right to a speedy trial in State v. Harris, 297 So.2d 431 (La.1974). The court stated:
The speedy trial guarantee of the Sixth Amendment to the United States Constitution applies to prosecutions in state courts. Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). In determining whether this constitutional right has been offended, the fixed-time period provided by statute or court rule is not determinative. 92 S.Ct. [at] 2188-2191. Rather, the issue is determined by "a balancing test, in which the conduct of both the prosecution and the defendant are weighed." [At] 2191-2192. Four of the factors to be assessed by the courts in determining, in each instance, whether a defendant has been denied a speedy trial are: "Length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." 92 S.Ct. [at] 2192.
Id., 297 So.2d at 432.
In the instant case, the defendant's claim under La. C. Cr. P. art. 701 D(1) is moot. The remedy under the Louisiana statute is release from custody without bail or release from a bail obligation if the defendant is not in custody. Mitchell has already been convicted, so the remedy under this article would be futile.
A chronology of events sheds light on defendant's oral speedy trial motion:
 The original oral motion was made on January 29, 2001.

*290  No affidavit (certificate of preparation for trial within 120 days) of counsel was ever filed, in violation of C. Cr. P. art. 701.
 No contradictory hearing was ever held, much less within 30 days.
 The defense either filed for continuances or otherwise acquiesced to numerous time delays.
 On March 11, 2002, the defendant's motion for speedy trial was denied, and his motion to quash on grounds for lack of speedy trial was denied.
 On September 30, 2002, defendant's trial began.
As the defendant has been convicted, there is no relief that this court could give the defendant. The record does not indicate that any delays or continuances were granted without just cause. Some of the reasons for time delays were pretrial motions filed on behalf of the defendant, appointment of a new defense attorney, and the illness of the defense attorney. Actions of both prosecution and the defense in this case were exemplary. The defendant has failed to show how the delay in bringing his case to trial has prejudiced him in any way.

CONCLUSION
The defendant's conviction for possession of cocaine with intent to distribute and his conviction for possession of marijuana with intent to distribute are affirmed. The two criminal conspiracy convictions are reversed. Accordingly, we vacate the two five-year sentences for these conspiracy convictions.
We also vacate the sentences for possession of cocaine with intent to distribute and for possession of marijuana with intent to distribute, and remand these two remaining charges to the trial court for resentencing, noting:
 A conviction of possession of cocaine with intent to distribute requires that the defendant serve the first five years without benefits rather than the first two. La. C. Cr. P. arts. 920(2) and 882 (even though recent jurisprudence holds the mandatory terms as being self-correcting by the Department of Public Safety and Corrections).
 There is a mandatory fine of "not more than $50,000.00" for the conviction of possession of marijuana with intent to distribute, as per La. R.S. 40:966 B(2).
 The trial court may want to reconsider the length and consecutive nature of the sentences, and better explain its decision on these issues, since there are only two remaining convictions, instead of the original four.

DECREE
Both conspiracy convictions are REVERSED, and the sentences for each offense are VACATED.
The convictions for possession of cocaine with intent to distribute and possession of marijuana with intent to distribute are AFFIRMED.
Both sentences for these two remaining convictions are VACATED, and the matters are REMANDED to the trial court for resentencing.