426 So.2d 1314 (1982)
STATE of Louisiana
v.
Johnny Ray RICHARDS.
No. 81-KA-2432.
Supreme Court of Louisiana.
May 17, 1982.
Rehearing Denied March 11, 1983.
*1315 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., John Mamoulides, Dist. Atty., Abbott J. Reeves, Robert Pitre, William C. Credo, III, Asst. Dist. Attys., for plaintiff-appellee.
William "Bill" Landry, Gretna, Catherine Leary, New Orleans, for defendant-appellant.
WALTER I. LANIER, Jr., Associate Justice Pro Tern.[*]
Johnny Ray Richard[1] was charged by bill of information with conspiracy to commit First Degree Murder in violation of La.R.S. 14:26 and 14:30. He pled not guilty, waived his right to trial by jury and elected trial by Judge. After a bench trial, the defendant was found guilty and subsequently sentenced to serve twenty (20) years at hard labor in the custody of the Louisiana Department of Corrections.

ASSIGNMENT OF ERROR NO. 1
The defendant asserts that there was insufficient evidence introduced at the trial to prove an agreement between two or more conspirators or an overt act committed by one or more of the conspirators to carry out the purpose of the conspiracy.
In State v. Mathews, 375 So.2d 1165 (La. 1979), a majority of this Court determined that under the United States Supreme Court case of Jackson v. Virginia, 433 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) the standard of review when considering the sufficiency of the evidence to support a criminal conviction is whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See also State v. Campuzano, 404 So.2d 1217 (La.1981).
The evidence construed in the light most favorable to the prosecution shows the following: On April 9, 1980, Joseph Kenneth France, while armed with a gun, robbed Marvin Ledet, the manager of Bridge City Circle Motors, of a motor vehicle valued at approximately $15,000.00. France was subsequently arrested and incarcerated in the Jefferson Parish Prison. While in jail, France called Jim McGuire, a friend of four years, and told him that he was facing some very serious charges and needed help. France told McGuire that the only way he could get out of his trouble was to eliminate the witness and he knew a man who would "do the job." France gave McGuire the names of two possible "hit men", John Richard and John Smith.
Immediately after this conversation, McGuire contacted Billy Tuggle of the United States Custom Service and informed him of the conversation. McGuire had been charged with the federal offense of receiving stolen things from a foreign shipment and the charge was still pending. Subsequently, McGuire entered into a plea bargain with the federal government and agreed to assist any law enforcement agency in the investigation of the conspiracy to commit murder. Thereafter, he pled guilty to the federal offense, but had not been sentenced as of the date of the trial in this case.
Pursuant to the initial telephone conversation with France, McGuire met him on an agreed date at Charity Hospital in New Orleans where France had been taken for treatment. France was escorted by a prison guard but the guard allowed the two men to talk for a few minutes. During this conversation, France informed McGuire what he wanted done and how to contact Johnny Richard. During this conversation, *1316 McGuire was equipped with a recording device on his ankle and a transmitting device under his shirt.
After this meeting with France, McGuire called Johnny Richard from the Intelligence Office of the Jefferson Parish Sheriff's Office. The call was monitored by a recording device. After a few wrong numbers, contact was made with the defendant. McGuire set up a meeting with him for the next morning at the Steak and Egg in Kenner.
The next day before the meeting, McGuire went to the Intelligence Office where a recording device and a transmitting device were placed in his automobile. When McGuire arrived at the Steak and Egg, the defendant got into the vehicle and the two men discussed France's request. The taped conversation in the record shows that Richard readily agreed to the "hit" and described how he would get rid of his weapon after he killed the witness. Richard advised that his price for the job would be between "five and ten."
After this meeting with the defendant, McGuire received a phone call from France. France told McGuire to get the defendant to agree to a price of $6,000.00 and to convince the defendant that after the "job" was over, he would be paid when France was released from jail.
Richard was again contacted by McGuire and a price of $6,000.00 was finally agreed upon for the killing. Richard wanted an advance down payment of $1,500.00.
McGuire set up another meeting with the defendant at the Steak and Egg in Kenner. A recording device and a transmitting device were again placed in McGuire's car. McGuire was also given $1,500.00 by the police to use as the "down payment" for the murder. France did not have the money to make the payment. When McGuire arrived at the Steak and Egg, the defendant was waiting for him. Richard told McGuire that he wanted to "get it taken care of within a week" and that he was going to pick up two pistols that afternoon. Richard stated that after the "job" was finished, he would call McGuire and say "I got the job." During the conversation, McGuire handed Richard the $1,500.00 and told him that he would get the balance when the job was done. A slip of paper containing the name and address of the victim was supposed to be in the envelope with the money, but was not there. McGuire stated that he would call Richard and give him this information.
After the conversation was over, Richard got out of the vehicle and McGuire drove away. Seconds later, Richard was arrested by police for conspiracy to commit first degree murder.
A criminal conspiracy to commit crime is an inchoate crime separate and distinct from the completed criminal act. State v. Brown, 398 So.2d 1381 (La.1981). Criminal conspiracy is defined in La.R.S. 14:26 in pertinent part as follows:
"A. Criminal conspiracy is the agreement or combination of two or more persons for the specific purpose of committing any crime; provided that an agreement or combination to commit a crime shall not amount to a criminal conspiracy unless, in addition to such agreement or combination, one or more of such parties does an act in furtherance of the object of the agreement or combination." (Emphasis Added).
For purposes of this case, First Degree Murder is defined in La.R.S. 14:30(4) in pertinent part as follows:
"First degree murder is the killing of a human being:
* * * * * *
(4) When the offender has specific intent to kill or inflict great bodily harm and has offered, has been offered, has given, or has received anything of value for the killing."
(Emphasis Added).
The crime of conspiracy is formed when an agreement to commit a crime is reached between two or more persons and an act is done in furtherance of the agreement. *1317 State v. Knowles, 392 So.2d 651 (La. 1980); State v. Rogers, 375 So.2d 1304 (La. 1979). The evidence shows beyond a reasonable doubt that an agreement was reached between France and Richard for the specific purpose of committing the murder for hire of a State witness for a price of $6,000.00. The fact that the details of payment of the price had not been completely worked out between the parties is of no consequence because the essence of the crime is the agreement of the two persons to commit murder.
The evidence shows beyond a reasonable doubt that the contemplated crime was first degree murder. There was a specific intent to kill the witness manifested by statements of both France and Richard. France offered the sum of $6,000.00 for the killing. Richard had offered to him the sum of $6,000.00 for the killing and he received the sum of $1,500.00 as a down payment. La. R.S. 14:30(4) does not require the actual payment of something of value, the mere offering of payment is sufficient to constitute the offense.
An overt act need not be an unlawful act; it may be any act, however, innocent in itself, accompanying or following the agreement, which is done in furtherance of its object. State v. Rittiner, 341 So.2d 307 (La.1976); State v. D'Ingianni, 217 La. 945, 47 So.2d 731 (1950).
The evidence shows beyond a reasonable doubt that overt acts were performed in furtherance of the conspiracy. The initial agreement to commit murder was consummated at the first meeting between McGuire and Richard. McGuire and Richard met a second time to transmit the down payment and the name of the victim. There were several phone calls from McGuire to Richard and between McGuire and France. In State v. D'Ingianni, supra, at page 733 of the Southern Reporter, an overt act was defined as follows:
"Any act, such as a visit by one of the parties to his co-conspirator for the purpose of discussing details, might suffice as an overt act to complete a criminal conspiracy although such an act would be regarded as merely preparatory in a prosecution for an attempt." (Emphasis Added).
There is sufficient evidence to support the conviction in this case.
This assignment of error is without merit.

ASSIGNMENT OF ERROR NO. 2
The defendant claims the affirmative defense of entrapment and alleges that he was unlawfully induced by McGuire to enter into the alleged conspiracy.
The law on entrapment as a defense is set forth in our opinion in State v. Batiste, 363 So.2d 639 (La.1978) at pages 641-42 of the Southern Reporter as follows:
"Under the generally accepted view an entrapment is perpetrated when a law enforcement official or a person acting in cooperation with such an official, for the purpose of obtaining evidence of the commission of an offense, solicits, encourages, or otherwise induces another person to engage in conduct constituting such offense when he is not then otherwise disposed to do so. ALI Model Penal Code, Tentative Draft § 2.10; W. LaFave and A. Scott, Criminal Law, § 48 (1972). This view, which has been labeled the `subjective' or `origin of intent' test for entrapment, reflects the views espoused in majority opinions of the United States Supreme Court, Hampton v. United States, 425 U.S. 484, 96 S.Ct. 1646, 48 L.Ed.2d 113 (1976); United States v. Russell, 411 U.S. 423, 93 S.Ct. 1637, 36 L.Ed.2d 366 (1973); Sherman v. United States, 356 U.S. 369, 78 S.Ct. 819, 2 L.Ed.2d 848 (1958); Sorrells v. United States, 287 U.S. 435, 53 S.Ct. 210, 77 L.Ed. 413 (1932). The lower federal courts are in accord. See, e.g., United States v. Esquer-Gamez, 550 F.2d 1231 (9th Cir.1977); United States v. Garcia, 546 F.2d 613 (5th Cir.1977); United States v. Russo, 540 F.2d 1152 (1st Cir. 1976); United States v. Jackson, 539 F.2d 1087 (6th Cir.1976). It is so called because *1318 it focuses attention on the defendant's predisposition to commit the offense as well as the actions of law enforcement officials. The inquiry under this test goes beyond the fact that criminal conduct was committed at the instance of law enforcement officials. Once government instigation is shown, the inquiry focuses upon the predisposition of the defendant. Under this test, the ultimate question is whether the inducement by the officers or the defendant's own predisposition caused the criminal conduct in question. See, 2 R. Cipes, Criminal Defense Techniques, §§ 30.01 et seq. (1976). States are not presently required by the federal constitution to recognize entrapment as a defense, but almost all have done so with a majority applying the `subjective' approach."
(Emphasis Added). (Footnotes Omitted).
This court has recognized the defense of entrapment and has focused its attention on the predisposition of the defendant to commit the crime at issue as well as the conduct of the police. State v. Batiste, supra; State v. Harrington, 332 So.2d 764 (La.1976); State v. Kelly, 263 La. 545, 268 So.2d 650 (1972); State v. Turner, 241 La. 94, 127 So.2d 512 (1961).
The evidence of record construed in the light most favorable to the prosecution shows beyond a reasonable doubt that the undercover agent, McGuire, merely furnished the opportunity for Richard to become involved in the conspiracy. The evidence shows that Richard readily became involved in the offense and he actively participated with no persuasion. The predisposition of Richard to be involved in activities of this type resulted in the criminal conduct in this case.
This assignment of error is without merit.

ASSIGNMENT OF ERROR NO. 3
During oral arguments, counsel for the defendant advised the court that the conspiracy charge against France had been dismissed by the State and that an additional assignment of error was urged on the grounds that there could be no conspiracy involving only one conspirator. The dismissal of the charge against France occurred while this appeal was pending. This objection was not previously raised in the trial court. Issues and objections not raised at the trial level will not be considered on appeal unless an error is alleged that is discoverable by a mere inspection of the pleadings and proceedings and without inspection of the evidence. Louisiana Code of Criminal Procedure, Articles 841 and 920; State v. Duncan, 390 So.2d 859 (La.1980); State v. Gardette, 352 So.2d 212 (La.1977); State v. Madison, 345 So.2d 485 (La.1977). The fact of dismissal of the charge against France and the reasons for the dismissal can only be determined by inspection of evidence, and are not errors discoverable by a mere inspection of the pleadings. The proper method for the defendant to raise this issue is by an application for post conviction relief. Louisiana Code of Criminal Procedure, Article 924 et seq.
This assignment of error is without merit.

DECREE
For the reasons assigned, the conviction and sentence are affirmed.
AFFIRMED.
NESTOR L. CURRAULT, Jr., Associate Justice Pro Tem., recused.
NOTES
[*] Judge Walter I. Lanier, Jr. of the Court of Appeal, First Circuit and Judges Fred S. Bowes and Nestor L. Currault, Jr. of the Court of Appeal, Fifth Circuit, participated in this decision as Associate Justices pro tempore, joined by Associate Justices Calogero, Dennis, Blanche and Lemmon.
[1] Counsel for the defendant advised in oral argument that Richard is the proper spelling of the defendant's name.