JUDE G. GRAVOIS, Judge.
IsThe plaintiff has appealed a summary judgment granted in favor of the defendants dismissing plaintiffs claims. For the reasons that follow, we affirm.

FACTS AND PROCEDURAL HISTORY

This case has a long and convoluted procedural history. Plaintiff, David Darr, and his former wife, Donna Penney, were the sole shareholders of two corporations, Marine Electronic Solutions, Inc. (“MES”) and M.E.S. Installations, Inc. (“MESI”). Ms. Penney, her father, and plaintiff were the directors of the corporations. Plaintiff owned 46 percent of the stock of MES and 45 percent of the stock of MESI.[1] Ms. Penney owned the remaining stock in the corporations. The corporations were incorporated in Florida and had an office in Harahan, Louisiana.
Plaintiff and Ms. Penney were married on May 24, 1996. Their marriage ended in *530 divorce on September 19, 2003. On August 24, 2003, as part of their [¿divorce proceeding, plaintiff and Ms. Penney entered into a Marital Settlement Agreement (the “MSA”) which included the following provision, to-wit:
The parties jointly own two (2) businesses, Marine Electronics Solutions, Inc., a Florida corporation, and M.E.S. Installations, Inc., a Florida corporation. The parties shall continue to jointly own said businesses and shall operate said businesses as they have done in the past. Furthermore, the parties’salaries shall remain equal.
(Emphasis added.)
On June 21, 2004, at a joint meeting of the board of directors of the corporations, the following changes were made in the management of the corporations: plaintiff was named Vice President of Marketing, and another employee, Clay Mazyck, was named Vice President of Operations. Because he vociferously objected to these changes (to the extent that management felt the need to call a police officer to have him escorted from the building), plaintiff was verbally terminated from employment and removed as a director of the corporations on that day.[2] Both corporations were dissolved in 2006.
On December 28, 2004, plaintiff filed a sixteen-page petition for damages naming Ms. Penney, Mr. Mazyck, and the corporations as defendants. In his petition, plaintiff made numerous allegations of misconduct by defendants, including that defendants: 1) violated the MSA which he alleged was a shareholder agreement; 2) failed to provide him with business records of the corporations; 3) failed to pay him; 4) improperly handled the corporations’ accounting, resulting in discrepancies; 5) improperly removed him as a board member; 6) improperly ejected him from the corporations’ premises; 7) provided him with a false and misleading valuation of the corporations; 8) failed to allow him to inspect the books of the corporations; and 9) failed to disclose records of the corporations | .¡¡regarding additional contracts of the corporations. Plaintiff alleged that defendants’ said actions and inactions caused him emotional distress, stress and hypertension. On February 17, 2005, plaintiff filed a supplemental petition alleging that: 1) his removal from the board of directors was in violation of the consent decree entered in his divorce proceeding; 2) the articles of incorporation require unanimous consent of all directors to remove a director; 3) he is entitled to his salary and benefits for as long as he is a shareholder in the corporations; 4) he is entitled to penalties for the failure to pay his salary; and 5) a conservator or curator be appointed to oversee the corporations.
Defendants filed various exceptions to plaintiffs claims. At a hearing on the exceptions, plaintiff verbally alleged various federal claims against defendants, prompting defendants to have the case removed to federal court. In federal court, defendants moved for and were granted summary judgment on all of the federal claims and on most of the state law claims asserted by plaintiff. Marine Electronics Solutions, Inc. v. Darr, 254 Fed. Appx. 356 (5th Cir.2007). Plaintiffs state law claims of alleged breach of fiduciary duty, request for review of corporate records, any shareholders’ derivative claims asserted by plaintiff, and whether the MSA constituted a shareholders’ agree *531 ment under Florida law, were eventually remanded to state court. Id.
After the matter was remanded, plaintiff filed a motion for partial summary judgment claiming that he was entitled to summary judgment confirming that the MSA constituted a shareholders’ agreement, an operating agreement and/or an employment contract, and that defendants breached the agreement. On September 16, 2009, the trial court denied plaintiffs motion for partial summary judgment.
On August 16, 2010, defendants moved for summary judgment on all of plaintiffs pending claims. On March 31, 2011, the trial court rendered judgment [ ^dismissing plaintiffs claims of breach of fiduciary duty, review of corporate records, and breach of shareholders’ agreement.[3] Plaintiff has timely appealed that judgment.

SUMMARY JUDGMENT

A motion for summary judgment is a procedural device used to avoid a full-scale trial when there is no genuine issue of material fact. Bell v. Parry, 10-369 (La.App. 5 Cir. 11/23/10), 61 So.3d 1, 2. The summary judgment procedure is favored and is designed to secure the just, speedy and inexpensive determination of every action. La. C.C.P. art. 966(A)(2). The motion should be granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue as to material fact and that mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B). The burden of proof is on the mover to show that he is entitled to judgment as a matter of law. La. C.C.P. art. 966(C)(2).
In determining whether summary judgment is appropriate, the appellate court reviews evidence de novo. Under this standard, the appellate court looks at pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, in making an independent determination that there is no genuine issue of material fact and that movant is entitled to judgment as a matter of law. Bell v. Parry, supra.
Because the corporations involved herein were incorporated in Florida, Florida corporate law applies to the claims on appeal. International Insurance Co. v. Johns, 874 F.2d 1447, 1458, n. 19 (11th Cir.1989).
|7In their motion for summary judgment, defendants argued that:
(1) Plaintiff has no claim for breach of fiduciary duty to disclose the state of the corporations in order for plaintiff to be able to ascertain the value of the corporations. Defendants argue that plaintiff has been provided with records and information that will permit him to make his own valuation. Defendants contend that plaintiff has been provided with all the documents to which he is entitled.
(2) Plaintiff has not stated an actionable shareholder derivative claim, explaining that a derivative action must be brought by a shareholder on behalf of the corporation. Defendants assert that in his pleadings, plaintiff is seeking damages for himself, not for the corporation.
(3) Plaintiff cannot establish a claim for an alleged breach of a shareholder’s *532 agreement because the MSA is not a shareholder’s agreement.
In support of them motion, defendants attached the transcript from a hearing on motions held on February 18, 2005. In that hearing, the trial judge, Judge Fred-ericka Wicker, to whom the case was previously assigned, held that:
(1) Plaintiff was entitled to the original valuation of the corporations.
(2) Plaintiff was entitled to the documents that form part of the valuation but not the assumptions upon which the valuations were based.
(3) Plaintiff was not entitled to the labor rate analysis spreadsheet and other calculations regarding payments to technicians.
(4) Plaintiff was entitled to all worksheets used to determine profit on any project completed.
(5) Plaintiff was entitled to all accounts receivables, accounts payable, employee accounts and benefits accounts.
Defendants also submitted portions of plaintiffs deposition, in which plaintiff admitted that he had received three different computer discs containing financial records of the corporations, including a disc containing financial records of the corporations into late 2005. An affidavit of Ms. Penney was also submitted in which she attested that plaintiff had been given computer discs from the corporations’ Quick-Books accounting system, containing all of the corporations’ financial records, including general ledgers, balance sheets, profit and loss | statements, accounts payable, accounts receivable, payroll, invoices, check details, and deposit details.
In opposition to the motion for summary judgment, plaintiff submitted an affidavit attesting that he has never been given the original valuation of the corporations, he has never been given communications concerning contracts not awarded, he had never been given worksheets, he has never received the QuickBooks discs that the corporations’ accountants worked from, and he was never given assumptions on which valuations of the corporations were based. Plaintiff also submitted various other documents, including a business valuation dated March 31, 2004, profit and loss statements dated 2004, and projected earnings of the corporations for 2004-2009. Plaintiff also submitted portions of the deposition of Corina May, the accountant for the corporations, who testified that valuations of the corporations were performed at the request of Ms. Penney.

ASSIGNMENT OF ERROR NUMBER ONE

In his first assignment of error, plaintiff asserts that the trial court erred in finding that defendants have provided him with all of the documents that Judge Wicker ordered defendants to provide to him at the hearing held in this matter on February 18, 2005.
As noted above, in support of their motion for summary judgment, defendants submitted an affidavit of Ms. Penney in which she attested that plaintiff has been given computer discs from the corporations’ QuickBooks accounting system, containing all of the corporations’ financial records.
Although plaintiff argues that he has never been given assumptions on which valuations of the corporations were based, Judge Wicker specifically held on February 18, 2005 that he was not entitled to these assumptions and instructed | nplaintiff s attorney that the proper way to obtain this information was through a deposition. Plaintiff never came forward with any competent evidence to controvert Ms. Penney’s affidavit that he has been given computer discs containing all of the *533 corporations’ financial records. Plaintiff has thus not shown that he has not been provided with financial data sufficient for him to have a business valuation performed. Moreover, plaintiff alleged in his petition that he made an offer to purchase Ms. Penney’s shares for a certain amount. Based on this allegation, plaintiff clearly had sufficient documents to perform a business valuation.
Further, under applicable Florida law, corporate income tax returns, the general ledger of the corporation, the balance sheets of the corporation, the profit and loss statements of the corporation, and the corporate stock book have been found to be the only relevant documents needed to determine the value of the corporation’s stock. Jewelers International Showcase, Inc. v. Mandell, 529 So.2d 1211 (Fla. 3rd DCA 1988). The record before us confirms that defendant has been given access not only to all of these particular corporate documents and financial records, but also to additional corporate documents and records as noted in Ms. Penney’s affidavit.
A plaintiff may not satisfy his burden under La. C.C.P. art. 967 by resting on mere allegations or by filing self-serving, conclusory affidavits which merely restate those allegations. Peralta v. Perazzo, 06-343 (La.App. 5 Cir. 10/31/06), 942 So.2d 64, 68, writ denied, 06-3028 (La.2/16/07), 949 So.2d 415. Our de novo review of the documents submitted by defendants in support of their motion for summary judgment, as well as the documents submitted by plaintiff in opposition to the motion, clearly establishes that no issues of material fact exist with respect to whether defendants have provided plaintiff with all of the |indocuments that Judge Wicker ordered them to provide to plaintiff at the hearing held in this matter on February 18, 2005. As such, the trial court did not err in granting summary judgment in favor of defendants on this issue.

ASSIGNMENT OF ERROR NUMBER TWO

In his second assignment of error, plaintiff asserts that the trial court erred in finding that defendant, Donna Penney, incurred no obligation under the Marital Settlement Agreement (the “MSA”), which plaintiff claims constituted a shareholders’ agreement.
In their motion for summary judgment, defendants argued the above-quoted clause contained in the MSA is not a shareholders’ agreement, and that even assuming arguendo that it was, plaintiff has not brought forth competent evidence to prove that defendants breached the alleged shareholders’ agreement. Defendants argued that in his deposition, plaintiff was asked what claims he was asserting against Ms. Penney, and plaintiff did not mention a breach of any agreement. Defendants further argued that the petition states that the defendant corporations were his employer and failed to continue paying his salary and benefits. Defendants also argued that in his deposition, plaintiff admitted that he did not have an employment contract with the corporations. Plaintiff then stated that the divorce agreement (the MSA) contained a stockholder’s agreement and was therefore a contract of employment.
Under Florida law, a shareholders’ agreement is “a written agreement that is signed by all persons who are shareholders at the time of the agreement and such written agreement is made known to the corporation.” Fla. Stat. Ann. 607.0732(2)(a)2. Implicit in this statute is the requirement that the persons signing the agreement are signing the agreement “as shareholders” of the corporation.
*534 .JjjUpon our de novo review of this matter, we find that plaintiff cannot carry his burden of proving that plaintiff and Ms. Penney signed the MSA “as shareholders” of the corporations. Rather, it is quite obvious that they signed the MSA in their individual capacities as part of settling various matters involved in their divorce proceeding. Further, mere knowledge of the existence of the MSA by plaintiff and Ms. Penney, without more, does not transform the MSA into a shareholders’ agreement. Thus, we find that plaintiffs argument that the above-quoted clause contained in the MSA somehow constitutes a shareholders’ agreement under Florida law is without merit.
Moreover, even if we were to construe the above-quoted clause contained in the MSA as a shareholders’ agreement, plaintiff has not shown that he will be able to carry his burden of proving any breach thereof. The clause contained in the MSA first provides that “[t]he parties shall continue to jointly own said businesses.” It is undisputed that plaintiff continued to own the same amount of stock in the corporations that he owned when the MSA was executed. The clause in the MSA next provides that the parties “shall operate said businesses as they have done in the past.” Plaintiff has not shown by competent evidence that he will be able to establish that the corporations were operated any differently after he was terminated from employment. Finally, the clause in the MSA provides that “the parties’ salaries shall remain equal.” Plaintiff has not shown that he will be able to carry his burden of showing that he has lost any salary subsequent to execution of the MSA while he was still employed by the corporations. Rather, it is undisputed that plaintiff was paid the same salary as Ms. Penney until he was terminated from employment on June 21, 2004. In fact, when plaintiff was asked in his deposition what he lost as a result of the board of directors voting to make him Vice President of Marketing and Mr. Mazyck Vice President of Operations, he responded that this 112decision restricted his job, but “looking back over the whole thing today [virtually nothing was taken away].”
Plaintiff further argues that the above-quoted clause contained in the MSA constitutes a contract of employment. However, even if we were to construe it as such, the clause fails to specify a period of time of employment, which under Florida law makes plaintiff an at-will employee subject to termination at any time.[4] Accordingly, no issue of material fact remains as to whether the MSA constitutes a contract of employment.
Also, the corporations were not parties to the MSA. Under Florida law, in order for a corporation to be bound by a contract, the person signing the contract must be acting as an agent of the corporation. Michael Const. Co. v. Smith, 244 So.2d 563 (Fla.App.1971). Plaintiff has not come forward with any competent evidence to establish that plaintiff and Ms. Penney were acting as agents of the corporations when they executed the MSA. As such, the MSA cannot be enforced against the corporations.
Finally, as Mr. Mazyck also was not a party to the MSA, he can have no obligations thereunder.
This assignment of error is without merit.

ASSIGNMENT OF ERROR NUMBER THREE

Plaintiff next complains that the trial court erred in finding that defendants, *535 Donna Penney and Clay Mazyck, did not breach their fiduciary duty by wasting corporate assets, by failing to provide a complete and honest valuation of the companies, by failing to account for funds and accounts receivable, and by taking exorbitant salaries to the depleting of the shareholders’ assets.
1^Plaintiff admits that he has received three different valuations of the corporations. He complains that because these valuations are different, he has been misled as to the value of his shares. A letter dated October 28, 2004 from an accounting firm addressed to Ms. Penney was attached to plaintiffs opposition to the motion for summary judgment. This letter explains that an original valuation was completed in June 2004 for a particular investor based on the fair market value of the corporations. A revised valuation was performed based on updated projected earnings. This letter explains that two business valuations were performed based on different assumptions. Valuations attached to the letter presumably are the valuations referred to in the letter. Plaintiff also attached a letter stating that he offered to purchase Ms. Penney’s shares of the corporations; however, Ms. Penney declined and offered to purchase his shares. Ostensibly, plaintiff must have come up with a valuation of the corporations in order to make an offer to purchase Ms. Penney’s shares. Thus, plaintiff has not shown that he did not have sufficient financial documents of the corporations so as to allow him to have his own valuations of the corporations performed.
In her affidavit, Ms. Penney attests that she and plaintiff were paid the same salary from the date of the MSA until plaintiffs termination from employment on June 21, 2004. Once a motion for summary judgment has been properly supported by the moving party, the non-moving party’s failure to come forth with any competent evidence to show there is a material factual dispute dictates the granting of the motion. Schultz v. Guoth, 10-0348 (La.1/19/11), 57 So.3d 1002, 1006. Plaintiff has not produced any competent evidence to controvert Ms. Penney’s affidavit.
Plaintiff further argues that the trial court erred in failing to find that defendants had breached their fiduciary duties by wasting corporate assets, and by | ^failing to account for funds and accounts receivable. However, nowhere in this nearly 500-page record is there one piece of competent evidence to support these allegations. Rather, there are numerous, repetitive, conclusory statements by plaintiff that certain funds were missing. Plaintiff never came forth with any competent evidence to show how he determined that certain funds were missing. Plaintiff has not even shown what the salaries of Ms. Penney and Mr. Mazyck were, much less shown how they were exorbitant.
Having found the record void of any competent evidence that would enable plaintiff to carry his burden of proof on this issue, the trial court did not err in granting summary judgment in favor of defendants on this issue.

ASSIGNMENT OF ERROR NUMBER FOUR

In his final assignment of error, plaintiff asserts that the trial court erred in finding that plaintiff is not entitled to bring a derivative action for the wasting of corporate assets.
In this assignment of error, plaintiff argues that defendants fired a competent CEO (plaintiff) and replaced him with a manager (Mr. Mazyck) that “could not even obtain one contract without giving away the store” and who failed to identify the actual cost of labor and failed to identi *536 fy or account for the loss of over $450,000 in cash. Plaintiff claims that the derivative claims were proven and the only question remaining is “how much corporate waste occurred.” Plaintiff concludes that any wasting of corporate assets is sufficient to maintain a derivative action.
A derivative action is “a suit asserted by a shareholder on the corporation’s behalf against a third party (usually a corporate officer) because of the corporation’s failure to take some action against the third party.” Black’s Law 11sDictionary (9th ed. 2009). After carefully reviewing plaintiffs original and first supplemental petition, we find that plaintiff has not filed a derivative action in this proceeding.[5] In fact, in his opposition to defendants’ exceptions of no cause of action and no right of action, plaintiff stated that “[t]his is not a derivative action,” and that “it is a direct action against the Defendant Corporations for failing to pay a salary and for penalties on each of the checks as each accrues under Louisiana law.” Further, in said pleading, plaintiffs counsel asserted that this was clearly “not [a stockholder’s derivative action.]”
Further, under Florida law, a derivative action cannot be brought, as plaintiff has apparently attempted to do here, on behalf of an individual shareholder seeking damages for himself, rather than damages on behalf of the corporations. Fla. Stat. Ann. § 607.07401; Lanman Lithotech, Inc. v. Gurwitz, 478 So.2d 425, 427 (Fla. 5th DCA 1985). Also, it is apparent from the record that plaintiff has failed to satisfy certain specific procedural requirements imposed by Florida law before asserting a derivative action. Florida law requires that before a derivative action can be asserted, prior demand must be made on the board of directors of the corporation. Fla. Stat. Ann. § 607.07401. Dismissal of the action is permitted on motion of the corporation if a determination is made by the corporation in good faith after conducting a reasonable investigation that the maintenance of the derivative suit is not in thé interest of the corporation.[6] Thus, even if we were to find that plaintiff |1fihas indeed asserted a derivative action in this proceeding, we would be required to find that plaintiff did not fulfill the procedural requirements before filing the derivative action, and thus his derivative action would be subject to dismissal on defendants’ motion for summary judgment.
This assignment of error is also without merit.

*537
CONCLUSION

Having found the record void of any competent evidence to show that plaintiff will be able to carry his evidentiary burden at trial on the issues presented, the trial court correctly granted summary judgment in favor of defendants. Accordingly, the judgment of the trial court under review is hereby affirmed. Plaintiff is cast with all costs of this appeal.

AFFIRMED

. This is plaintiffs percentage of ownership in the corporations as attested to by Ms. Penney in her affidavit filed by defendants in connection with their motion for summary judgment, although both plaintiff and defendants at various times in the record state that plaintiff owned 45 percent of the stock of the corporations.

. This termination of plaintiff as a director of the corporations was followed up in writing on September 9, 2004 through two written consents of shareholders executed by Ms. Penney as the majority shareholder of the corporations.

. Although not specifically addressed in his judgment, it is apparent from the record of this matter and the arguments of the parties, both in their briefs and during oral arguments before this Court, that the trial court determined that plaintiff had not asserted a derivative action in this proceeding.

. Mousa v. Lauda Air Luftfahrt, A.G., 258 F.Supp.2d 1329, 1346 (S.D.Fla.2003); Hartley v. Ocean Reef Club, Inc., 476 So.2d 1327, 1328 (Fla. 3rd DCA 1985).

. Although plaintiff argues in his brief that he "amended his claims to include the two defendants [MES] and [MESI] as nominal Plaintiffs to meet the requirements of the derivative action,” such amended claims were apparently filed by plaintiff in federal court while the case was pending there. The state trial court record before us reflects that only plaintiff's original petition and his first supplemental and amending petition were filed in and con- ■ sidered by the trial court in deciding defendants’ motion for summary judgment. Although plaintiff was permitted to file what he contends is a copy of the complete record of the federal proceeding in this Court, we are prohibited from considering such supplemental filing in this Court by plaintiff since plaintiff failed to properly and timely introduce such record of the federal proceeding in the trial court in defense of defendants’ motion for summary judgment.

. This determination can be made either by "(a) A majority vote of independent directors present at a meeting of the board of directors, if the independent directors constitute a quorum; (b) A majority vote of a committee consisting of two or more independent directors appointed by a majority vote of independent directors present at a meeting of the board of directors, whether or not such independent directors constitute a quorum; or (c) a panel of one or more independent persons appointed by the court upon motion by the corporation.” Fla. Stat. Ann. § 607.07401.