GRAVOIS, J.
INTRODUCTION
Plaintiff/appellant, Thomas A. Ricalde, appeals the summary judgment dismissing his whistleblower retaliation action brought against defendants/appellees, Evo-nik Stockhausen, LLC (“Evonik”) and Dr. Edwin Mereand. For the reasons that follow, we affirm the trial court’s granting of the summary judgment.
FACTS AND PROCEDURAL HISTORY
In 1998, Mr. Ricalde began working as a laboratory technician for Evonik at its chemical production facility in Garyville, Louisiana. The facility produced polyacry-late super absorbent products that were sold to customers such as Proctor and Gamble and Kimberly Clark, for use in baby diapers, adult diapers, feminine gynecological products, and pads used for absorption in the meat and poultry industry. Mr. Ricalde was responsible for conducting chemical and laboratory tests on the polya-crylate super absorbent products.
Beginning in 2002 and lasting throughout the rest of his employment at Evonik, Mr. Ricalde was concerned with what he alleged to be alterations of different testing methods used in the lab. He alleged that the alterations were done to “deliberately pass off spec material,” and this meant Evonik was -not meeting the specifications in the agreements it had with its customers. As a result, according to Mr. Ricalde, potentially dangerous material was being released and used in baby diapers. Over the years, Mr.- - Ricalde expressed his concerns to Evonik’s management, human resources department, and corporate office. On November 11, 2010, Mr. Ricalde sent an email to Lee Braem, Evonik’s senior corporate counsel and chief compliance officer, in which he al *550 leged that Evonik’s plants in Garyville, Louisiana and Krefeld, Germany “failed to adequately test a single sample of the AGM product (with the exception of 9732) sold to Proctor and |2Gamble for the last six years.” He further stated that the failure to adequately test the products led Evonik to release material that was “off spec and often times dangerous to the general public.”
In response to this email, Evonik investigated Mr. Ricalde’s complaints, and on December 13, 2010, produced a compliance investigation report detailing the investigation. The report concluded as follows:
Krefeld and Garyville Quality Control Laboratories have and are following established quality control protocol for Su-perabsorber products sold and delivered to the Proctor & Gamble Company. These protocols are consistent with P&G specifications. The Quality Assurance program is adequate to ensure that these protocols remain valid and up to date and ES maintains an ongoing collaboration with P&G in Quality matters. The complaint is not valid.
On February 7, 2011, Mr. Ricalde was terminated from his job at Evonik by Dr. Mereand. On February 6, 2012, Mr. Ri-calde filed suit against Evonik and Dr. Mereand, alleging that he was terminated from his employment in violation of La. R.S. 23:967, Louisiana’s Whistleblower Statute. He also asserted claims of intentional inflection of emotional distress, wrongful termination, retaliatory discharge, and defamation. Specifically in his suit, Mr. Ricalde claimed that during the course of his employment, he became aware of:
the ongoing failure of [Evonik] to properly test the raw materials coming into the lab, the failure to test the in-process and finished product for the levels of residual acrylic acid, the apparently deliberate failure to properly conduct performance tests on in-process and finished product, the apparently deliberate falsification of data, certificates of analysis, audit reports, continued use of contaminated lab equipment, a lack of oversight of the night shift lab technicians and input data and instances where untested material was shipped out for consumer use.
Mr. Ricalde alleged that' he tried to bring this to the attention of his supervisors; however, he was unsuccessful in getting them to take action, was “intentionally and systematically ignored,” and became “the subject of harassment by supervisory personnel for his failure to participate in these illicit practices,”
On September 26, 2012, defendants filed an exception of no cause of action relative to Mr. Ricalde’s claims against Evonik and Dr. Mereand for wrongful termination and retaliatory discharge and Mr. Ricalde’s whistleblower retaliation claim against Dr. Mereand. On March 8, 2013, a consent judgment was signed by both parties sustaining the peremptory exception of no cause of action as to those claims.
Defendants then answered the petition and denied Mr. Ricalde’s remaining allegations. After extensive discovery was conducted, on April 20, 2015, defendants moved for summary judgment seeking dismissal - of the suit. In their motion for summary judgment, defendants argued that they were entitled to summary judgment because Mr. Ricalde could not meet the requirements of Louisiana’s Whistle-blower Statute, including that there had been an actual violation of a state law by defendants. In support of their motion, defendants attached Mr. Ricalde’s email to Mr. Braem, his answers to interrogatories, and parts of his deposition testimony. They argued that Mr. Ricalde failed to identify a *551 violation of any state law in any of these documents.
Mr. Ricalde opposed the motion for summary judgment, arguing that in his email to Mr. Braem, he articulated violations of the following state laws: second degree battery in violation of La. R.S. 14:34.1; cruelty to juveniles in violation of La. R.S. 14:93; and cruelty to the infírmed in violation of La. R.S. 14:93.3. Further, Mr. Ricalde alleged that defendants were guilty of attempting to commit these offenses and conspiracy to commit these offenses. In support of his opposition, Mr. Ricalde attached an affidavit of one, of his former co-workers, Troy Corbin,, who attested that the products Evonik Sold had high acid levels and this caused injury to children and babies wearing diapers containing Evonik’s products.
Defendants filed a reply to Mr. Ri-calde’s opposition and argued that Mr. Ri-calde could not prove any of his allegations of violations of the various state criminal laws referred to in his opposition.
Following a hearing on September 18, 2015, the trial court issued a judgment on October 29, 2015, granting the motion for summary judgment.[1] In its written reasons for judgment, the trial court found that a victim is required for the criminal, laws that were allegedly violated, and that nothing suggested that there were “any reports or complaints from any of Evonik’s clients (notably Proctor and Gamble or Kimberly Clark) that made reference to a particular victim that suffered an injury.” Accordingly, the trial court found that Mr. Ricalde was unable to prove a violation of state law, as required by Louisiana’s Whis-tleblower Statute. On November 19, 2015, a final judgment of dismissal with prejudice was signed by the trial court dismissing all claims in the lawsuit.
This timely appeal followed.
LAW AND ANALYSIS
Summary judgment “shall be rendered ... if the pleadings, depositions, answers to interrogatories, and admissions, together with the affidavits, if any, admitted for purposes of the motion for summary judgment, show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law.” La. C.C.P. art. 966(B)(2).[2] The party bringing the motion bears the burden of proof; however, where the moving party will not bear the burden of proof at trial, the moving party must only point out that there is an absence of factual support for one or more elements essential to the adverse party’s claim. La. C.C.P. art. 966(C)(2). Thereafter, if the adverse party fails to produce factual support sufficient to show that he will be able to meet his evidentiary burden of proof at trial, no issue of material fact exists and the moving party is entitled to summary judgment. Id.
On appeal, our review of summary judgments is de novo under the same criteria that govern the district court’s consideration of whether summary judgment is appropriate. Pizani v. Progressive Ins. Co., 98-225 (La.App. 5 Cir. 9/16/98), 719 So.2d 1086, 1087. The decision as to the propriety of a grant of a motion for summary judgment must be made with *552 reference to the substantive law applicable to the case. Muller v. Carrier Corp., 07-770 (La.App. 5 Cir. 4/15/08), 984 So.2d 883, 885.
Louisiana’s Whistleblower Statute, La. R.S. 23:967, states, in pertinent part:
A. An employer shall not take reprisal against an employee who in good faith, and after advising the employer of the violation of law:
(1) Discloses or threatens to disclose a workplace act or practice that is in violation of state law.
(2) Provides information to or testifies before any public body conducting ah investigation, hearing, or inquiry into any violation of law.
(3) Objects to or refuses to participate in an employment act or practice that is in violation of law.
B. An employee may commence a civil action in a district court where the violation occurred against any employer who engages in a practice prohibited by Subsection A of this Section. If the court finds the provisions of Subsection A of this Section have been violated, the plaintiff may recover from the employer damages, reasonable attorney fees, and court costs.
La. R.S. 23:967 protects employees against reprisal from employers for reporting or refusing to participate in illegal work practices. Hale v. Touro Infirmary, 04-0003 (La.App. 4 Cir. 11/3/04), 886 So.2d 1210, 1214, writ denied, 05-0103 (La. 3/24/05), 896 So.2d 1036. The statute targets serious employer conduct that violates the law. Fondren v. Greater New Orleans Expressway Com’n, 03-1383 (La.App. 5 Cir. 4/27/04), 871 So.2d 688, 691. In order to qualify for protection from reprisal under this statute, the court must find that the provisions of subsection A have been violated. The plaintiff must establish an actual violation of state law, not just a good faith belief that a law was broken. Ross v. Oceans Behavioral Hosp. of Greater New Orleans, 14-368 (La.App. 5 Cir. 11/25/14), 165 So.3d 176, 180, writ denied, 15-0005 (La. 3/27/15), 161 So.3d 648. (Emphasis in original.)
On appeal, Mr. Ricalde argues that the trial court erred when it granted the motion for summary judgment. He contends that he repeatedly described serious violations of state laws and articulated the specific statutes in his supplemental responses to defendants’ interrogatories. He argues that the grounds on which the .trial court based its decision—that there must be a victim in order to sustain his whistleblower complaint—is legally incorrect.
Mr. Ricalde claims that in. his email to Mr. Braem, his petition, and his deposition, he described in great detail conduct that constitutes a number of felony offenses. This conduct includes Evonik knowingly and intentionally administering a poison or other noxious substance upon each and every person who purchased and used its products that contained harmful levels of acrylic acid and other substances in order to make a better profit thus resulting in second degree battery, a violation of La. R.S. 14:34.1. The conduct also includes Evonik knowingly and intentionally causing there to be high levels of acrylic acid in baby diapers and adult diapers which caused extreme physical pain and protracted disagreement and the impairment of the function of a bodily member, namely the genitals. This resulted in the commitment of cruelty to a juvenile in violation of La. R.S. 14:93 and cruelty to the infirmed in violation of La. R.S. 14:93.3.[3]
*553 While Mr. Ricalde may have a good faith belief-that these laws were broken, we find that he cannot meet his burden of proof of showing “an actual violation” of these state laws. See Boss, supra. Mr. Ricalde has provided no evidence that Evonik allegedly sold products that were “off spec” and that these products, allegedly caused injury to anyone. In his email to Mr. Braem, Mr. Ricalde discussed his concern that high levels, of acrylic acid in Evonik’s products would allow for babies to “sit in a pool of his/her own urine or feces.” However, at his deposition, when asked about this allegation, he admitted that he did not have any knowledge that any babies actually ever ended up ljdng in their feces because of anything Evonik produced. He attempts to support his allegations with the affidavit of a former employee at Evonik, Troy Corbin. In his affidavit, Mr. Corbin attested that there was a high level of acid in products being' produced by Evonik and that the acid levels were so high that they could and did cause injury to children wearing diapers containing its products. However, like Mr. Ri-caide, Mr. Corbin provides no facts identifying any child or infirmed that actually received such injuries.
After Mr. Ricalde sent his email to Mr. Braem, Evonik conducted a full investigation of the allegations. Joe Fields, a member of the investigative team, stated at his deposition that Mr. Ricalde’s complaints were taken seriously and multiple people were assigned to the investigation. The resulting investigation report stated that the investigation revealed that Evonik was incorporating all of the parameters of its customer Procter and Gambles’ specifications, that Proctor and Gamble regularly performed quality assurance testing, that it was not aware of any past or current customer complaints regarding the quality controlled parameters on the delivered products, and that it was unaware of any past or current consumer complaints to Proctor and Gamble regarding diapers produced with Evonik’s products.
Without being able to present evidence of these injuries, Mr. Ricalde cannpt meet *554 his burden of proof in showing that an actual violation of second-degree battery, cruelty to juveniles, or cruelty to the in-firmed occurred.
It is well settled that a plaintiff opposing summary judgment cannot rest on the mere allegations of his pleadings, but must set forth specific facts showing that there is a genuine issue for trial. La. C.C.P. art. 967(B); Darr v. Marine Electronics Solutions, Inc., 11-908 (La.App. 5 Cir. 5/22/12), 96 So.3d 527, 533, writ denied, 12-1442 (La. 10/8/12), 98 So.3d 860. Conclusory allegations and unsupported speculation will, not support the finding of a genuine issue of material fact. Trench v. Winn-Dixie Montgomery LLC, 14-152 (La.App. 5 Cir. 9/24/14), 150 So.3d 472, 476.
Mr. Ricalde argues on appeal that not naming a victim is inconsequential with regards to committing conspiracy to commit a crime or the attempt to commit a crime. To support this argument, Mr. Ri-calde relies on State v. Richards, 426 So.2d 1314 (La.1982), where the Supreme Court upheld a conviction for conspiracy to commit first-degree murder. Mr. Ricalde likens this case to the present case because, though the defendant in Richards conspired to commit the offense of first-degree murder and was convicted thereof, there was no actual victim of the crime. Conspiracy, as defined in La. R.S. 14:26, is the agreement or combination of two or more persons for the specific purpose of committing any crime, where one or more of such parties does an act in furtherance of the object of the agreement or combination. In Richards, the State was able to prove that the defendant reached an agreement for the specific purpose of committing murder for hire of a State’s witness in a pending criminal case and performed an act in furtherance of that agreement. Id. at 1317. In the present case, Mr. Ricalde has presented no evidence of any agreement between Evonik and any other person for the specific purpose of committing second-degree battery, cruelty to juveniles, cruelty to the in-firmed, or any other state law, nor has he provided evidence that an act was performed in furtherance of any agreement. We find no merit to this argument.
Mr. Ricalde also relies on State v. Thurston, 04-937 (La.App. 5 Cir. 3/1/05), 900 So.2d 846, writs denied, 05-1332 (La. 1/9/06), 918 So.2d 1040, and 05-1342 (La. 1/9/06), 918 So.2d 1041, to support his argument that a victim does not need to be named for “attempted crimes” in violation of La. R.S. 14:27.[4] In Thurston, the court found the defendant guilty of attempted aggravated rape of a fictitious nine-year-old victim. An undercover agent with the *555 Department of Justice posed as the mother of a nine-year-old child in an internet chat room, and the defendant inquired about sex with the child. Id. at 848. The defendant then planned a specific time and place to meet the child and in the chats repeatedly stated that he would begin, to perform sex acts on the child almost immediately upon their meeting. Id. at 849. The defendant and the agent arranged to meet at the airport, and upon his arrival at the airport, he was arrested. Id. The court found that it is the intent to commit the crime on an intended victim that constituted an attempt, not the possibility of success. Id. at 851. The present case is distinguishable from Thurston because Mr. Ricalde presented no evidence that anyone at Evonik had the specific intent to commit the alleged crimes and presented no evidence of any acts or omissions by anyone at Evonik for the purpose' of and tending directly toward the accomplishing of that objective. We find no merit to this argument.
As stated above, summary judgment “shall be rendered ... if the pleadings, depositions, answers to interrogatories, and admissions, together with the affidavits, if any, admitted for purposes of the motion for summary judgment, show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law.” La. C.C.P. art. 966(B)(2). Defendants, being the parties bringing the motion for summary judgment, bear the burden of proof of their motion; however, since defendants will not bear the burden of proof at trial, they need only point out that there is an absence of factual support for one or more elements essential to Mr. Ricalde’s claim. La. C.C.P. art. 966(C)(2). Here, defendants have pointed out that there is an absence of factual support for one or more elements essential to Mr. Ricalde’s claim, to-wit: disclosure or threatened disclosure of “a workplace act or practice that is in violation of state law.” La. R.S. 23:967(A)(1). Thereafter, Mr. Ricalde was required to provide factual support for this element essential to his claim. Upon de novo review, we find that Mr. Ricalde failed to produce factual support sufficient to show that he will be able to meet his evidentiary burden of proof at trial, and further, that no issue of material fact exists, and that defendants are entitled to summary judgment as a matter of law. La. C.C.P. art. 966(C)(2). Accordingly, the trial court did not err in granting defendants’ motion for summary judgment and in dismissing Mr. Ricalde’s suit.
CONCLUSION
For the foregoing reasons, the trial court’s judgment granting the motion for summary judgment is affirmed.
AFFIRMED

. In the motion for summary judgment, defendants also argued that there were no genuine issues of material fact with regard to Mr. Ricalde’s claims of defamation of character and intentional infliction of emotional distress. Mr. Ricalde did not oppose these contentions. Thus, the trial court granted summary judgment as to those claims as well.

. The summary judgment hearing in this case was held on September 18, 2015. Accordingly, we apply the version of La. C.C.P. art. 966 in effect at that time.

. La. R.S. 14:34.1 defines second degree battery as' a battery when the offender intention *553 ally inflicts serious bodily injury. La, R.S. 14:33 defines battery as the intentional use of force or violence upon the person of another; or the intentional administration of a poison or other noxious liquid or substance to another.
La. R.S. 14:93 defines cruelty to juveniles as:
1) The intentional or criminally negligent mistreatment or neglect by anyone seventeen years of age or older of any child under the age of seventeen whereby unjustifiable pain or suffering is caused to said child. Lack of knowledge of the child's age shall not be a defense; or
2) The intentional or criminally negligent exposure by anyone seventeen years of age or older of any child under the age of seventeen to a clandestine laboratory operation as defined by R.S. 40:983 in a situation where it is foreseeable that the child may be physically harmed. Lack of knowledge of the child’s age shall not be a defense.
3)The intentional or criminally negligent allowing of any child under the age of seventeen years by any person over the age of seventeen years to be present during the manufacturing, distribution, or purchasing or attempted manufacturing, distribution, or purchasing of a controlled dangerous substance in violation of the Uniform Controlled Dangerous Substances Law. Lack of knowledge of the child's age shall not be a defense.
La. R.S. 14:93.3 defines cruelty to the in-firmed as' the intentional or criminally negligent- mistreatment or neglect by any person, including a caregiver, whereby unjustifiable pain, malnourishment, or suffering is caused to a person with an infirmity, an adult with a disability, or a person who is aged, including but not limited to a person who is a resident of a nursing honre, facility for persons with intellectual disabilities, mental health facility, hospital, or other residential facility.

. La. R.S. 14:27 states in pertinent part:
A. Any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended; and it shall be immaterial whether, under the circumstances, he would have actually accomplished his purpose.
B. (1) Mere preparation to commit a crime shall not be sufficient to constitute an attempt; but lying in wait with a dangerous weapon with the intent to commit a crime, or searching for the intended victim with a dangerous weapon with the intent to commit a crime, shall be sufficient to constitute an attempt to commit the offense intended.
(2) Further, the placing of any combustible or explosive substance in or near any structure, watercraft, movable, or forestland, with the specific intent eventually to set fire to or to damage by explosive substance such structure, watercraft, movable, or forestland, shall be sufficient to constitute an attempt to commit the crime of arson as defined in R.S. 14:51 through 53.